# UNITED STATES DISTRICT COURT
## OF THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALLIANCE OF LEGAL CANNABIS ENTITIES-DC, LLC** | ) | |
| 1717 Pennsylvania Avenue NW | ) | |
| Suite 1025 | ) | |
| Washington, DC 20006, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| **POWER OF PLANTS LLC  t/a MR. NICE GUYS** | ) | |
| 15501 Brandywine Road | ) | |
| Brandywine, Maryland 20613, | ) | |
| | ) | |
| **GREGORY DAVID WIMSATT** | ) | |
| 740 Pearson Point Place | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **DAMION WEST** | ) | |
| 14305 Flowing Creek Court | ) | |
| Bryantown, Maryland 20617 | ) | |
| | ) | |
| **AMERICAN LEGENDS LLC** | ) | |
| **t/a AA GALLERY, et al.** | ) | |
| 2206 18th Street NW | ) | |
| Washington, DC 20009, | ) | |
| | ) | |
| **ALL AMERICAN PAPERS LLC** | ) | |
| **t/a AA BAKERY CAFE, et al.** | ) | |
| 1334 N. Capitol Street NW | ) | |
| Washington, DC 20002, | ) | |
| | ) | |
| **RAMON ROQUE** | ) | |
| 619 14th Place NE | ) | |
| Washington, DC 20002 | ) | |
| | ) | |
| **MOTHER BLOSSOM LLC** | ) | |
| 406 8th Street SE | ) | |
| Washington, DC 20003, | ) | |
| | ) | |
| **GVN3 LLC** | ) | |
| 1236 H Street NE | ) | |
| Washington, DC 20002, | ) | |

**FLOWERZ LLC**  )
318 Massachusetts Avenue NE  )
Washington, DC 20002,  )
  )
**CHAD MICHAEL FREY**  )
12655 Pyramid Peak Drive  )
Peyton, Colorado 8831-4475,  )
  )
**SEEDLESS LLC t/a N.K.A. (NO KIDS ALLOWED)**  )
637 Pennsylvania Avenue SE  )
Washington, DC 20003,  )
  )
**EUPHORIA HEALING & WELLNESS LLC**  )
**t/a EUPHORIA CANNA**  )
611 1/2 Pennsylvania Avenue SE  )
Washington, DC 20003,  )
  )
**BUD LOVE LLC**  )
1221 Pennsylvania Avenue SE  )
Washington, DC 20019-1502,  )
  )
**LEGACY INVESTMENT USA LLC**  )
**t/a FRIENDS SMOKE SHOP**  )
1223 Pennsylvania Avenue SE  )
Washington, DC 20003,  )
  )
**HAZRET SAFI**  )
32076 Camino Rabago  )
Temecula, California 92592,  )
  )
**DREAMS WELLNESS LLC t/a Puff Dreams**  )
1829 M Street NW  )
Washington, DC 20036,  )
  )
**3101 RHODE ISLAND AVENUE LLC**  )
3399 Benning Road NE  )
Washington, DC 20019-1502  )
  )
**ANFIELD 1470 CHURCH LLC**  )
6811 Barrett Lane  )
Bethesda, Maryland 20850-7756,  )
  )
**8th STREET DEV LLC**  )
The Meadows Office Complex  )
301 State Route 17 North, Suite 802  )

2

Rutherford, New Jersey 07070-2580,    )
    )
**TDM LLC**    )
1930 9TH Street NW    )
Washington, DC 20001-4108,    )
    )
**WY18 RETAIL LLC**    )
655 New York Avenue NW, Suite 830    )
Washington, DC 20001-5795,    )
    )
**LOUISE D'COSTA-BROWN**    )
**BRIAN R. BROWN**    )
1241 New Jersey Avenue NW    )
Washington, DC 20001-1207,    )
    )
**CHUKWUJINDU VICTOR MBAKPUO**    )
**NDIDIAMAKA E. MBAKPUO**    )
1301 Jordans Endeavor Drive    )
Bowie, Maryland 20720,    )
    )
**RAHIMI INVESTMENT INC.**    )
7910 South Run View    )
Springfield, Virginia 22153,    )
    )
**JEMAL'S NITI LLC**    )
655 New York Avenue NW, Suite 830    )
Washington, DC 20001-5795,    )
    )
**JEMAL'S ARCADE LLC**    )
655 New York Avenue NW, Suite 830    )
Washington, DC 20001-5795,    )
    )
**LIENHAI NGUYEN QUANG TRUSTEE**    )
**QUANG LIENHAI LIVING TRUST**    )
7052 31st Street NW    )
Washington, DC 20015,    )
    )
**637-639 PENNSYLVANIA AVENUE SE LLC**    )
c/o Baker Tilly US LLP    )
11150 Santa Monica Boulevard    )
Los Angeles, California 90025-0479,    )
    )
**L&S REAL ESTATE LLC**    )
611 Pennsylvania Avenue SE    )
Washington, DC 20003-4303,    )
    )

3

**ZHU LI WU**                            )
715 Walker Road                     )
Great Falls, Virginia 22066,        )
 )
**JIA QI REN**                              )
707 President Street               )
Apt 1510                          )
Baltimore, Md 21202            )
 )
**STEVE FARZAD ARDEKANI**    )
19 Middleburg Court               )
Gaithersburg, Maryland 20878-4506,    )
 )
**FARAZ ARDEKANI**              )
1314 N. Carolina Avenue NE      )
Washington, DC 20002-6424,      )
                   *Defendants.*    )

## COMPLAINT FOR INJUNCTIVE RELIEF AND EQUITABLE DAMAGES

Plaintiff Alliance of Legal Cannabis Entities-DC, LLC ("ALCE" or "Plaintiff") brings this action against Defendants Power of Plants LLC t/a Mr. Nice Guys ("Guys DuPont Circle Dispensary", "Guys Logan Circle Dispensary", "Guys Capitol Hill Dispensary", and "Guys U Street Dispensary"), Gregg David Wimsatt ("Wimsatt"), Damion West ("West"), American Legends LLC ("American Legends") and All American Papers LLC ("American Papers")  t/a All American Gallery, Bakery Cafe, CBD, and Papers ("AA  Adams Morgan Dispensary", "AA Truxton Circle Dispensary", "AA  U Street Dispensary", and "AA  H Street Dispensary"), Ramon Roque ("Roque"), Mother Blossom LLC ("Mother Capitol Hill Dispensary"), Gvn3 LLC ("Giving H Street Dispensary"), Flowerz LLC ("Flowerz Capitol Hill Dispensary"), Chad Michael Frey ("Frey"), Seedless LLC t/a N.K.A. ("No Kids Allowed) ("NKA Capitol Hill Dispensary"), Euphoria Healing & Wellness LLC t/a Euphoria Canna ("Euphoria Capitol Hill Dispensary"), Bud Love LLC ("Bud Capitol Hill Dispensary"), Legacy Investment USA LLC t/a

4

Friends Smoke Shop ("Friends Capitol Hill Dispensary"), Hazret Safi ("Safi"), Dreams Wellness

LLC t/a Puff Dreams ("Puff DuPont Circle Dispensary"), 3101 Rhode Island Avenue LLC

("1215 Connecticut Property Owner"), Anfield 1470 Church LLC ("1470 Church Property

Owner"), 8th Street Dev LLC ("409 8th Property Owner"), TDM LLC ("1922 9th Property

Owner"), WY18 Retail, LLC ("2206 18th Property  Owner"), Louise D. Costa-Brown and Brian

R. Brown ("1334 N. Capitol Property Owner"), Chukwujindu Victor Mbakpuo  and Ndidiamaka

E. Mbakpuo ("1908 9th Property Owner"), Rahimi Investment Inc. ("504 H Property Owner"),

Jemel's Niti LLC ("406 8th Property Owner"), Jemel's Arcade LLC ("1236 H Property Owner"),

Lienhai Nguyen Quang Trustee under the Quang Lienhai Living Trust ("318 Massachusetts

Property Owner"), 637-639 Pennsylvania Avenue SE LLC ("637 Pennsylvania Property

Owner"), L&S Real Estate LLC ("611 Pennsylvania Property Owner"), Zhu Li Wu and Jia Qi

Ren ("1829 M Property Owner"), Steve Farzad Ardekani ("1221 Pennsylvania Property

Owner"), and Faraz Ardekani ("1223 Pennsylvania Property Owner") for equitable relief,

including injunctive relief against unlicensed cannabis dispensary-defendants to prevent them

from continuing to sell illegal cannabis in the District of Columbia, and against property owner-

defendants to prevent them from continuing to lease to unlicensed cannabis dispensaries.

Plaintiff also requests equitable relief through the disgorgement of defendants' profits for the

damage caused by the negligence, gross negligence, false advertising, and unfair competition of

Defendants that allowed illegal cannabis dispensaries to operate in the District of Columbia,

selling and promoting the sale of illegal cannabis in DC and violating the provisions of the

Lanham Act, 15 U.S.C. §1125(a), and common law in the District of Columbia, against false

advertising and unfair competition.  In support of this Complaint, Plaintiff states the following:

**PARTIES**

1.      Plaintiff Alliance of Legal Cannabis Entities-DC, LLC ("ALCE") is an alliance representing the legal cannabis market in the District of Columbia and membership is open to all legal cannabis entities in the District of Columbia who have been operating in the past three years and were licensed by the District of Columbia's Alcohol Beverage and Cannabis Administration ("ABCA") or its predecessor agency, the District of Columbia's Department of Health ("DOH"), to cultivate cannabis flower (in a variety of strains, both THC and CBD, and hemp) in the District of Columbia ("cultivators"), to manufacture various cannabis products in the District of Columbia using cannabis flower cultivated in the District of Columbia, *e.g.* pre-rolls, cartridges, concentrates, vapes, edibles, etc. ("manufacturers"), and/or to sell to the public in accordance with the regulatory rules and regulations of ABCA, the legal cannabis flower and other cannabis products cultivated and manufactured in the District of Columbia ("retailers" or "dispensaries"). This legal cannabis market has been damaged by the unlicensed and illegal cannabis dispensaries advertising and operating in interstate commerce, the property owners who provided the commercial space for them to operate, and other participants materially contributing to the illegal cannabis market. The legal licensees (cultivators, manufacturers, and dispensaries) bearing the brunt of the damage to the legal cannabis market are the oldest licensees, that group of 15 licensees who received their licenses before January 1, 2024, and were operating for 3 or more years before that.  However, new cannabis licenses are now being issued by ABCA and these new licensees are also being harmed by the illegal cannabis market.  ALCE is open to both original and new licensees.

2.      ALCE is an LLC organized in the District of Columbia with its principal place of business at 1717 Pennsylvania Avenue NW, Suite 1025, Washington, DC 20006.  All members of

ALCE were licensed by ABCA (or DOH and subsequently renewed by ABCA) to cultivate/manufacture cannabis flower and other cannabis products in the District of Columbia, and/or to sell such legal cannabis at retail in the District of Columbia.  Two such licensees, DC Holistic Wellness Group LLC (with its principal place of business at 4721 Sheriff Road NE, Washington, DC 20019) and Herbal Alternatives II LLC (with its principal place of business at 1710 Rhode Island Avenue NW, Washington, DC 20036), both LLCs organized in the District of Columbia, are the organizing members of ALCE.  Other licensees who have or had cultivation/manufacturing licenses and/or cannabis retailer licenses have joined ALCE.  ALCE also remains open for all cannabis licensees to become ALCE members at any time.

3.      Defendant Power of Plants LLC ("Power of Plants") t/a/ Mr. Nice Guys operates four separate unlicensed and illegal cannabis dispensaries in the commercial spaces leased at (i) 1215 Connecticut Avenue NW, Washington, DC 20036 ("Guys DuPont Circle Dispensary"); (ii) 1470 Church Street NW, Washington, DC 20005 ("Guys Logan Circle Dispensary"); 409 8th Street SE, Washington, DC 20003 ("Guys Capitol Hill Dispensary"); and, (iv) 1922 9th Street NW, Washington, DC 20001 ("Guys U Street Dispensary").  One of these illegal dispensaries (Guys U Street Dispensary) is located within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law.  The Power of Plants is an LLC organized in the District of Columbia with its principal place of business at 15501 Brandywine Road, Brandywine, Maryland 20613.

4.      Defendant Gregory David Wimsatt ("Wimsatt") and Defendant Damion West ("West") are the managing members of Defendant Power of Plants and they direct and control the operations of all the unlicensed and illegal cannabis dispensaries owned by Power of Plants, including the four unlicensed and illegal dispensaries in the District of Columbia: Guys DuPont

Circle Dispensary, Guys Logan Circle Dispensary, Guys Capitol Hill Dispensary, and Guys U Street Dispensary. Mr. Wimsatt is a resident of the State of Maryland  and he resides at 740 Pearson Point Place, Annapolis, Maryland 21401.  Mr. West is a resident of the State of Maryland and he resides at 14305 Flowing Creek Court, Bryantown, Maryland 20617. Defendants Wimsatt and West are included here as defendants based on Plaintiff's request to pierce the corporate veil between the Defendant Power of Plants and Defendants Wimsatt and West.

5.      Defendant American Legends LLC ("American Legends"), together with its affiliated LLC (All American Papers LLC),  operated four separate unlicensed and illegal cannabis dispensaries in the commercial spaces leased at ("2206 18th Street NW, Washington, DC 20009 ("AA  Adams Morgan Dispensary"); (ii) 1334 N. Capitol Street NW Washington, DC 20002 ("AA Truxton Circle Dispensary"); (iii) 1908 9th Street NW , Washington, DC 20001 ("AA U Street Dispensary"); and, (iv) 504 H Street NE, Washington, DC 20002 ("AA  H Street Dispensary").  All four of these illegal dispensaries are located within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law. American Legends is an LLC organized in the District of Columbia with its headquarters business address at 1717 N Street NW, Suite 1, Washington, DC 20036.

6.      Defendant All American Papers LLC ("American Papers") is affiliated with American Legends (under common ownership) and appears to jointly operate several unlicensed and illegal cannabis dispensaries with American Legends, including but not necessarily limited to those illegal dispensaries in commercial space leased at (i) 1334 N. Capitol Street NW, Washington, DC 20002 ("AA Truxton Circle Dispensary"); and (ii) 504 H Street NE, Washington, DC 20002 ("AA H Street Dispensary").  American Papers is an LLC organized in the District of Columbia

with its principal place of business at 1334 N. Capitol Street NW, First Floor, Washington, DC

20002.  American Papers was recently evicted from its principal place of business and moved to

504 H Street NE, Washington, DC 20002, but that location was recently shut down by ABCA.

7.      Defendant Ramon Roque ("Roque") is the managing member of Defendants American

Legends LLC and All American Papers LLC and he directs and controls the operations of the

unlicensed and illegal cannabis dispensaries owned by these two LLCs, including AA  Adams

Morgan Dispensary, AA  Truxton Circle Dispensary, AA U Street Dispensary, and AA  H Street

Dispensary. Mr. Roque is a resident of the District of Columbia and he resides at 619 14th Place

NE, Apt #2, Washington, DC 20002.  Defendant Roque is included here as a defendant based on

Plaintiff's request to pierce the corporate veil between the Defendants American Legends LLC ,

All American Papers LLC, and Defendant Roque.

8.      Defendant Mother Blossom LLC ("Mother Capitol Hill Dispensary") operates an

unlicensed and illegal dispensary in the commercial space at 406 8th Street SE, Washington, DC

20003.  The Mother Capitol Hill Dispensary is an LLC organized in the District of Columbia

with its principal place of business at 406 8th Street SE, Washington, DC 20003.

9.      Defendant Gvn3 LLC t/a Giving Tree ("Giving H Street Dispensary"), operates an

unlicensed and illegal dispensary in the commercial space at 1236 H Street NE, Washington, DC

20002 within ¼-mile of a middle or high school where the sale of electronic smoking devices are

expressly prohibited by DC law.  The Giving H Street Dispensary is an LLC organized in the

District of Columbia with its principal place of business at 1236 H Street NE, Washington, DC

20002.

10.     Defendant Flowerz LLC ("Flowerz Capitol Hill Dispensary") operates an unlicensed and

illegal dispensary in the commercial space at 318 Massachusetts Avenue NE, Washington, DC

20002 within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law.   The Flowerz Capitol Hill Dispensary is an LLC organized in the State of Wyoming on October 30, 2019, and it registered in the District of Columbia on October 17, 2022, with its principal place of business at 617 8th Street NE, Washington, DC 20002.

11.    Defendant Chad Michael Frey ("Frey") is the owner of Defendant Flowerz LLC and he directs and controls the operations of this illegal cannabis dispensary. Mr. Frey is a resident of the State of Colorado  and he resides at12655 Pyramid Peak Drive, Peyton, Colorado 80831-4475.  Defendant Frey is included here as a defendant based on Plaintiff's request to pierce the corporate veil between the Defendant Flowerz Capitol Hill Dispensary and Defendant Frey.

12.    Defendant Seedless LLC t/a N.K.A. (No Kids Allowed) (NKA Capitol Hill Dispensary") operates an unlicensed and illegal dispensary in commercial space at 637 Pennsylvania Avenue SE, Washington, DC 20003 within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law.  The NKA Capitol Hill Dispensary is an LLC organized in the District of Columbia with its principal place of business at 637 Pennsylvania Avenue SE, Washington, DC 20003.

13.    Defendant Euphoria Healing & Wellness LLC t/a Euphoria Canna ("Euphoria Capitol Hill  Dispensary") operates an unlicensed and illegal dispensary in the commercial space at 611 ½ Pennsylvania Avenue SE,  Washington, DC 20003 within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law.  The Euphoria Capitol Hill Dispensary is an LLC organized in the District of Columbia with its principal place of business at 611 Pennsylvania Avenue SE, Washington, DC 20003.

14.     Defendant Bud Love LLC ("Bud Capitol Hill Dispensary") operates an unlicensed and illegal dispensary in the commercial space at 1221 Pennsylvania Avenue SE, Washington, DC 20003 within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law.  The Bud Capitol Hill Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1221 Pennsylvania Avenue SE, Washington, DC 20003.

15.     Defendant Legacy Investment USA LLC t/a Friends Smoke Shop ("Friends Capitol Hill Dispensary") operates an unlicensed and illegal dispensary in the commercial space at 1223 Pennsylvania Avenue SE, Washington, DC 20003 within ¼-mile of a middle or high school where the sale of electronic smoking devices are expressly prohibited by DC law.  The Friends Capitol Hill Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1223 Pennsylvania Avenue SE, Washington, DC 20003.

16.     Defendant Hazret Safi is the owner of Defendant Legacy Investments USA LLC ("Friends Capitol Hill Dispensary") and he directs and controls the operations of this illegal cannabis dispensary. Mr. Safi is the Resident Agent for the Friends Capitol Hill Dispensary but on information and belief, it appears that Mr. Safi is a citizen of the State of California and that he resides at 32076 Camino Rabago, Temecula, California 92592.  Defendant Safi is included here as a defendant based on Plaintiff's request to pierce the corporate veil between the Defendant Friends Capitol Hill Dispensary and Defendant Safi.

17.     Defendant Dreams Wellness LLC t/a Puff Dreams ("Puff DuPont Circle Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1829 M Street NW, Washington, DC 20036.  The Puff DuPont Circle Dispensary is an LLC organized in the

District of Columbia with its principal place of business at 1829 M Street NW, Washington, DC 20036.

18.    Defendant 3101 Rhode Island Avenue LLC ("1215 Connecticut Property Owner") is the owner of the commercial property located at 1215 Connecticut Avenue NW, Washington, DC 20036. The 1215 Connecticut Property Owner is an LLC organized in the State of Maryland with its headquarters business address at 3399 Benning Road NE, Washington, DC 20019-1502.

19.    Defendant Anfield 1470 Church LLC ("1470 Church Property Owner") is the owner of the commercial property located at 1515 15th Street NW, Units C-1 and C-2, Washington, DC 20005. These retail condominium units face Church Street NW and use the address 1470 Church Street NW, Washington, DC 20005. The 1470 Church Property Owner is an LLC organized in the District of Columbia with its headquarters business address at 6811 Barrett Lane, Bethesda, Maryland 20814-1205.

20.    Defendant 8th Street Dev LLC ("409 8th Property Owner") is the owner of the commercial property located at 409 8th Street SE, Washington, DC 20003. The 409 8th Property Owner is an LLC organized in the District of Columbia with its headquarters business address at The Meadows Office Complex, 301 State Route 17 North, Suite 802, Rutherford, New Jersey 07070-2580.

21.    Defendant WY18 Retail LLC ("2206 18th Property Owner") was the owner of the commercial property located at 1801 Wyoming Avenue NW, #C-4, Washington, DC 20009 which has a mailing address of 2206 18th Street NW, Washington, DC 20009 until it sold the property on June 20, 2024, to 18th Street Investment JGM Three LLC. The 2206 18th Property Owner is an LLC organized in the District of Columbia with its principal place of business at 655 New York Avenue NW, Suite 830, Washington, DC 20001-5795.

22.     Defendants Louise D'Costa-Brown and Brian R. Brown ("1334 N. Capitol Property Owner") are the joint owners of the commercial property located at 1334 N. Capitol Street NW, Washington, DC 20002.  The 1334 N. Capitol Property Owner are residents of the District of Columbia and reside at 1241 New Jersey Avenue NW, Washington, DC 200011207.

23.     Defendants Chukwujindu Victor Mbakpuo and Ndidiamaka E. Mbakpuo ("1908 9th Property Owner") are the joint owners of the real property located at 1908 9th Street NW, Washington, DC 20001.  The 908 9th Property Owner are residents of the State of Maryland and reside at 1301 Jordan Endeavor Drive, Bowie, Maryland 20720.

24.     Defendant Rahimi Investment Inc. ("504 H Property Owner") is the owner of  the commercial property located at 502-504 H Street NE, Washington, DC 20002, and it is the General Partner of the unincorporated 502-504 H Street GP which is not registered in the District of Columbia but the business address given for real estate tax purposes is 4903 Annapolis Road, Bladensburg, Maryland 20710-1224.  Rahimi Investments Inc. is a corporation organized in the State of Maryland with its headquarters business address at 7910 South Run View, Springfield, Virginia 22153.

25.     Defendant Jemel's Niti LLC ("406 8th Property Owner") is the  owner of the commercial property located at 406 8th Street SE, Washington, DC 20003.  The 406 8th Property Owner is an LLC organized in the District of Columbia with its principal place of business at 655 New York Avenue NW, Suite 830, Washington, DC 20001-5795.

26.     Defendant Jemel's Arcade LLC ("1236 H Property Owner") is the owner of the commercial property located at 1236 H Street NW, Washington, DC 20002.  The 1236 H Property Owner is an LLC organized in the District of Columbia with its principal place of business at 655 New York Avenue NW, Suite 830, Washington, DC 20001-5795.

27.     Defendant Lienhai Nguyen Quang Trustee under the Quang Lienhai Living Trust ("318 Massachusetts Property Owner") is responsible for and has control over the commercial property located at 319 Massachusetts Avenue NE, Washington, DC 20002. The 318 Massachusetts Property Owner resides at 7052 31st Street NW, Washington, DC 20015.

28.     Defendant 637-639 Pennsylvania Avenue SE LLC ("637 Pennsylvania Property Owner") is the  owner of the commercial property located at 639 Pennsylvania Avenue SE, Washington, DC 20003 which is also the premise address for 637 Pennsylvania Avenue SE, Washington, DC 20003.  The 637 Pennsylvania Property Owner is an LLC organized in the State of Delaware, and while it owns real property in the District of Columbia, it is not registered here to do business. The public information in Delaware shields from disclosure its business address and only provides the name and address of its Registered Agent in Delaware: The Corporation Trust Company, Corporation  Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. DC tax assessment records show that bi-annual real estate taxes on this property are sent to 637-639 Pennsylvania Avenue SE LLC, c/o Baker Tilly US LLP, 11150 Santa Monica Boulevard, Suite 600, Los Angeles, California 90025-0479.

29.     Defendant L&S Real Estate LLC ("611 Pennsylvania Property Owner") is the owner of commercial property located at 611 Pennsylvania Avenue SE, Washington, DC 20003 which includes the property with the mailing address of 611 ½ Pennsylvania Avenue SE, Washington, DC 20003.  The 611 Pennsylvania Property Owner is an LLC organized in the District of Columbia with  its principal place of business at 611 Pennsylvania Avenue SE, No. 300, Washington, DC 20003-4303.

30.     Defendant Zhu Li Wu and Defendant Jia Qi Ren ("1829 M Property Owners") are the owners of the commercial property located at 1829 M Street NW, Washington, DC 20036 which

is part of a larger property parcel they own with the legal address at 1827 M Street NW, Washington, DC 20036.  Defendant Zhu Li Wu is a resident of the Commonwealth of Virginia and resides at 715 Walker Road, Great Falls, Virginia 22066.  Defendant Jia Qi Ren is a resident of the State of Maryland and resides at 707 President Street, Apt. 1510, Baltimore, Maryland 21202.

31.    Defendant Steve Farzad Ardekani ("1221 Pennsylvania Property Owner") is the owner of commercial property located at 1221 Pennsylvania Avenue SE, Washington, DC 20003.  The 1221 Pennsylvania Property Owner is a resident of the State of Maryland and resides at  19 Middleburg Court, Gaithersburg, Maryland 20878-4506.

32.    Defendant Faraz Ardekani ("1223 Pennsylvania Property Owner") is the owner of commercial property located at 1223 Pennsylvania Avenue SE, Washington, DC 20003.  The 1223 Pennsylvania Property Owner is a resident of the District of Columbia and resides at 1314 N. Carolina Avenue N, Washington, Dc 20002-6424.

## JURISDICTION AND VENUE

33.    This Court has federal question jurisdiction over this case, 28 U.S.C. §1331 and 15 U.S.C. §1121, and supplemental jurisdiction over the state law claims, 28 U.S.C. §1367.

34.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the actionable activities took place in the District of Columbia, the illegal dispensaries operated in the District of Columbia and all commercial properties used by these dispensaries are located in the District of Columbia.

## FACTS

### A.  ALCE

35.    The cultivation of cannabis and the manufacture of cannabis products in the District of Columbia and the sale and distribution of such is governed by the Legalization of Marijuana for

15

Medical Treatment Amendment Act of 2010, as amended, D.C. Code §7-1671.05, *et seq*. and the rules issued by ABCA, D.C. Code §25-204.02 and DCMR Title 22-C. These laws and ABCA rules require that cultivators, manufacturers, and retailers of cannabis be licensed by ABCA. DC Code §7-1671.06. The only cannabis flower (including all THC and CBD strains, and hemp) and other cannabis products that can be legally sold in the District of Columbia are subject to these laws and regulations.

36.    D.C. Code §7-1671.01(22) states: An "unlicensed establishment" is a sole proprietorship, partnership, or other business entity that:

> (A) Sells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products;
> (B) Operates at or delivers from a specific location in the District; and
> (C) Is not licensed by ABCA as a cultivation center, retailer, internet retailers, manufacturer, courier or testing laboratory.

37.    D.C. Code §7-1671.08(a) provides that:

> Any person who manufactures, cultivates, posses, administers, dispenses, distributes or uses cannabis, or manufactures, posses, distributes, or uses paraphernalia, in a manner not authorized by this chapter or the rules issued pursuant to §7-1671.13 shall be subject to criminal prosecution and sanction under subchapter I of Chapter 11 of Title 48[§48-1101 *et seq*.].[1]

38.    Unlicensed and illegal cannabis dispensaries in DC often sell illegal flavored tobacco products and illegal "magic" mushrooms (containing psilocybin, a Schedule I Controlled Substance that has a hallucinogenic effect) to increase the mix of "buzz" products offered consumers to gain an unfair competitive over legal cannabis dispensaries that do not sell these

---

[1] The definition of "cannabis" as used throughout DC laws and regulations is defined in Section 102(3) of the DC Controlled Substance Act of 1981, D.C. Code §48-901.02. This definition adopted in the DC Marijuana Legalization Act, D.C. Code §7-1671.01(2A). This definition includes all parts of the plant genus Cannabis which includes THC, CBD and all other cannabinoids. *See also, Korneguy v. United States*, 236 A.3d 414, 420 (D.C. 2020)(noting D.C. Code §48-904.01(a)(1) does not permit an adult to "sell, offer for sale, or make available for sale" cannabis, except pursuant to D.C. Code §7-1671.01 *et seq*. which establishes the licensing procedures under ABCA.)

illegal products.  Additionally, many illegal cannabis dispensaries are located within ¼-mile of a middle or high school where it is also illegal to sell any electronic smoking device.

39.    The Flavored Tobacco Prohibition Amendment Act of 2021, §7-1721.01, *et seq*., makes it illegal to sell flavored tobacco products or electronic smoking devices within ¼-mile of a middle or high school.

> §7-1721.08(a)- No person shall sell, offer for sale, receive for sale, distribute, purchase or facilitate the sale of:
> (1) A flavored tobacco product; or
> (2) An electronic smoking device within one quarter mile of any middle or high school in the District.

40.    D.C. Code §7-1721.01 Definitions:

> (1)  "Characterizing flavor" means a distinguishable taste or aroma other than tobacco, including fruit, chocolate, vanilla, candy, dessert, alcoholic beverage, menthol, mint or evergreen.
> (1A) "Electronic smoking device" shall have the same meaning as provided in §7-741.01(1).
> (1B) "Flavored tobacco product" means any tobacco product or synthetic nicotine product that imparts a characterizing flavor.

41.    The Electronic Cigarette Parity Amendment Act of 2016, D.C. Code §7-741.01 Definitions:

> (1) "Electronic smoking device" means any products, including one composed of a heating element, battery, or electronic circuit, that contains or delivers nicotine or any other substance intended for human consumption that can be used by a person to simulate smoking through inhalation of vapor or aerosol from the product.  The term "electronic smoking device" includes any such products, regardless of whether it is manufactured, distributed, marketed, or sold as an e-cigarette, e-cigar, e-pipe, e-hookah, vape pen, or any other product name or descriptor.

42.    The initial cultivation/manufacturing and retailing licenses were issued by the DC Government in 2013, and during the past several years prior to this lawsuit, there had been fifteen licensees who constituted the legal market in the District of Columbia. Several additional cannabis licensees have been authorized by ABCA since April 1, 2024.

43.     In the past several years due to the operation of illegal unlicensed dispensaries selling cannabis products that are illegal in the District of Columbia, the legal licensed cannabis market has lost substantial revenues siphoned off by illegal market participants.  Illegal cannabis products are largely indistinguishable by consumers from legal cannabis products which is why the misrepresentation of the legality and origin of the illegal cannabis by defendants and their false advertising has harmed the legal cannabis market through the loss of commercial sales. Some public estimates put the illegal cannabis revenues in the District of Columbia at $600 million plus per year.

44.     Faced with squeezed margins and the loss of substantial revenues, several legal licensed cultivators/manufacturers and retailers have been forced to discontinue operations, and all cannabis licensees, who ALCE represents as the legal cannabis market, have lost revenues to the illegal cannabis market in the District of Columbia.  Illegal dispensaries are competitors with the legal cannabis licensees, and those who materially participated in the illegal dispensaries' establishment or by financing, selling, or transporting illegal cannabis, or leasing commercial retail space to allow illegal cannabis dispensaries to make commercial retail sales, are then also competitors with legal licensees.

45.     In recognition of the need for the legal cannabis market to pursue legal action to stop the complete erosion of the legal market and to seek equitable relief for lost commercial sales, several licensed cannabis entities decided to form the ALCE as an open alliance for all legal cannabis licensees who have been harmed over the past several years and continue to be harmed today by illegal dispensaries and other participants who materially assisted in the establishment and operation of illegal dispensaries engaged in the sale of illegal cannabis.

46.    ALCE is open to all legal cannabis entities (cultivators, manufacturers, and retailers)

including new legal entities, to become members.[2]  The purpose of ALCE as stated in Section 1.4

of its Operating Agreement:

> The purpose of the Company [ALCE] is to protect and safeguard the legal cannabis
> market in the District of Columbia as represented by those legal entities who were
> licensed by the District of Columbia Alcohol Beverage and Cannabis Administration
> ("ABCA") as operators of cannabis retail facilities (i.e., dispensaries) or cannabis
> cultivation and manufacturing facilities. To accomplish this purpose, the Company is
> established to pursue legal action against Persons who have either directly or indirectly
> participated in illegal activities or aided and abetted illegal operators in the illegal sale,
> distribution, delivery, promotion, handling, advertising or payment for illegal cannabis or
> illegal substitutable products or otherwise assisting, promoting or enabling these illegal
> entities to operate and inflict economic harm on individual legal cannabis licensees
> and/or the legal cannabis market in the District of Columbia. Further, the Company is
> authorized to engage the services of Persons to represent the Company or to provide
> investigative or analytical services related to illegal cannabis entities and their operations
> and Persons providing them with goods and services.
>
> In recognition of the economic harm inflicted on the legal DC cannabis market over the
> past several years by the illegal cannabis participants and enablers, membership in the
> ALCE – DC is open to all legal entities licensed by ABCA, who operate or operated legal
> cannabis facilities.  All Members authorize ALCE - DC to negotiate on behalf of the
> Members with the Persons involved in or otherwise assisting or enabling the illegal
> cannabis market in DC so as to contribute to the reduction in illegal sales, removal of
> illegal products from the market, and to obtain  compensation for the economic harm
> inflicted on the legal cannabis market and licensed entities generally in DC in the last 3
> years and continuing.  All Members authorize ALCE – DC to represent their respective
> interests in the legal cannabis market in DC in judicial proceedings as part of ALCE – DC
> seeking damages done to the legal market in DC, and to represent to the Court that ALCE
> – DC has the same standing as each individual Member would have had if it had
> separately participated as a plaintiff.

47.    All members of ALCE accept its Operating Agreement and the purpose quoted above.

48.    Since membership in ALCE is permanently open to cannabis licensees in the District of

Columbia, ALCE expects additional licensees to join ALCE to help protect the legal cannabis

---

[2] There are some restrictions with respect to new members who previously operated illegal dispensaries and who are
being sued or subject to being sued by ALCE on behalf of its members.

market in the District of Columbia from the harm caused by illegal cannabis market participants, including the harm they cause by the diversion of commercial sales to the illegal market involving the sale and delivery of illegal cannabis flower and other cannabis products.

49.    ACLE represents its members collectively and has the same standing to sue that its individual members have—all of whom are (were) licensed cultivators, manufacturers and/or retailers, and as a consequence, ALCE has standing to sue the unlicensed and illegal dispensaries in the District of Columbia and those participants, including property owners, who have contributory liability or are otherwise liable for the material assistance they provided the illegal dispensaries in the sale and delivery of illegal cannabis flower and other cannabis products.

50.    ALCE is suing on behalf of the legal cannabis market in the District of Columbia for the injunctive relief from the ongoing harm being caused by defendants to the legal cannabis market represented by ALCE and for equitable damages for the loss of commercial sales by the legal cannabis market in the past three years.  Since ALCE is only seeking equitable relief in the form of injunctive relief against defendants to cease illegal cannabis sales and equitable damages in the form of disgorgement of defendants' profits, the direct participation here of individual members of ALCE is not necessary.

51.    Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), permits ALCE "subject to the principles of equity to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  ALCE only seeks to recover the defendants' profits and the costs of this action. And, as otherwise provided in Section 35(a):

> The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, or any sum above the amount found as actual damages,

not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional cases may award reasonable attorney fees.

51.    ALCE seeks disgorgement of the profits of each property owner-defendant based on the lease revenues each property owner-defendant received from illegal dispensary-defendants. Since the lease rates used are triple net[3], the profits of each property-owner are equivalent to their lease revenues.  The lease revenues/profits of each property owner-defendant are reasonably determined from using the Costar[4] commercial property database plugged into the following formula:

> •(Square Footage of the property leased by the property owner-defendant) x (Lease Rate for the leased property) x (time period the property owner-defendant leased to the illegal dispensary-defendant) =  Profits to be disgorged

52.    ALCE seeks disgorgement of the profits of each illegal dispensary-defendant based on the sales revenues received by each illegal dispensary-defendant from the sale of illegal cannabis.   The sales revenues/profits of each illegal cannabis dispensary-defendant are reasonably determined from using the same Costar commercial database plugged into the following formula:

> •Sales revenues are reasonably estimated at 10 times greater than commercial rent paid (10 is used in these calculations as a reasonable factor which equals paying 10% of sales in rent);
> •Dispensary retail mark-up is assumed to be comparable to other industry retail margins of approximately 60%, minus rent (10%) and other expenses, leaving 25% of sales as the net profits.

---

[3] Triple net is a lease –common in commercial real estate- where the tenant pays all expenses, including real estate taxes, building insurance and maintenance, in addition to the cost of rent and utilities.

[4] Costar is the world's leader in real estate information.  It has the most comprehensive database and online platform for commercial real estate information, analytics and news, and its database includes leasing information for all the commercial properties involved in this case.

•(Rent x 10) x 25% = Profits to be disgorged

53.     The disgorgement of the defendants' profits is equitable relief and does not require the

participation of any individual members of ALCE.

### B.   1215 CONNECTICUT PROPERTY OWNER – GUYS DUPONT CIRCLE DISPENSARY

54.     Defendant 3101 Rhode Island Avenue LLC ("1215 Connecticut Property Owner") leases

its commercial space on the 4th Floor to Defendant Power of Plants LLC t/a Mr. Nice Guys

("Guys DuPont Circle Dispensary") who operates an illegal dispensary at that location. The 1215

Connecticut Property Owner has been leasing approximately 2000 sf of commercial space on the

4th floor since December 1, 2021 (2 years/11 months ago) for use by different illegal and

unlicensed cannabis dispensaries.  According to Costar, the rent for this commercial space is

$43-$52/sf; ALCE used $52/sf as the most likely rate under the factual circumstances of this

lease in the calculations of the property owner's profits.

55.     The 1215 Connecticut Property Owner intentionally leased its commercial space for the

sale of illegal cannabis. The 1215 Connecticut Property Owner was aware that its tenants (or

subtenants) were operating as illegal cannabis dispensaries.  For several years, this space was

leased (or subleased) to Grass DMV LLC t/a Grass DC through the end of 2023 for the purpose

of selling illegal cannabis and was replaced in February, 2024 by Guys DuPont Circle

Dispensary.  The 1215 Connecticut Property Owner never required any of its illegal cannabis

dispensary-tenants to obtain even a basic business license and it never obtained a Certificate of

Occupancy until earlier this year.  The 1215 Connecticut Property Owner uses a third party, DAO

One Group LLC, as its agent to find tenants (or subtenants) to lease its commercial space to sell

illegal cannabis.

56.    The Guys DuPont Circle Dispensary is part of a small chain of unlicensed cannabis dispensaries in DC and Maryland with a heavily promoted logo (yellow smiley face with crossed-out eyes above its brand name).  The Guys DuPont Circle Dispensary places an A-frame sign with its logo (and QR Code for its cannabis menu) on the sidewalk in front of the building entrance to the dispensary when it is open.

57.    The Guys DuPont Circle Dispensary has applied to ABCA for a cannabis retailer license to operate a legal cannabis dispensary at this location, but applying for a license does not in any way authorize its unlicensed and illegal operations pending the issuance of a license.  To the contrary, the operation of an unlicensed dispensary means that Guys DuPont Circle has been selling illegal cannabis flower and other cannabis products purchased in interstate commerce from illegal sources in other states and foreign countries and is a basis for the denial of its license application. Despite awareness as to these illegal activities, the property owner never required the tenant to wait to begin operating until a cannabis license from ABCA had been issued.

58.    The Guys DuPont Circle Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA. It has at all times operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the Guys DuPont Dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis that it sold was illegal.  Additionally, the Guys DuPont Circle Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

59.    The 1215 Connecticut Property Owner never investigated or conducted any meaningful due diligence review of the Guys DuPont Dispensary (or in any way sought to prevent the dispensary from operating unless or until ABCA authorized its operations) before allowing it to

begin operating as an unlicensed and illegal dispensary. The 1215 Connecticut Property Owner pursued the lessee to use the space to operate an illegal cannabis dispensary as quickly as it could without regard to the law, the impact of the legal cannabis market or the potential harm of allowing the public to consume cannabis products from unknown, illegal sources outside the District of Columbia.

60.    The Guys DuPont Circle Dispensary extensively promotes itself and advertises in interstate commerce, both individually and as part of the Power of Plants chain, through the use of social media (Instagram (@mrniceguydc), Facebook (Mr.NiceGuysDC1), X(@mrniceguydc, Tik Tok (Mr. Nice Guys DC), YouTube (Mr. Nice Guys), Vimeo.com/944235589, Quora), paid internet guides to illegal dispensaries (Toker's Guide, Yelp, Mrweednearme.com, AllBud.com), the internet (MapQuest, Google Search, About.me, Medium.com, Nextdooor.com, Foursquare.com, Weedx.io, Foursquare.com, Herbagemag.com, flickr.com, Botw.com, etc.), its own Blog via Blogger.com (https://mrniceguysdcusa.blogspotcom) and its own website (www.mrniceguysdc.com). It uses the internet to promote itself in interstate commerce as a legal cannabis dispensary in DC and advertises its cannabis products as legal in DC and misleads the public in DC into believing it is a legal supplier of cannabis in DC. For example, on both Instagram and X and its website (and others) it claims to be a "I-71 Complaint Shop in Washington DC".

61.    ABCA has found that illegal dispensaries claiming to be "I-71 Complaint" was false advertising, a violation of DC Code, and a misrepresentation to the public as to the legalization of commercial sales transactions being conducted by unlicensed cannabis dispensaries. The Guys DuPont Circle Dispensary uses the internet to falsely promote and advertise itself as a legal

dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

62.     DC's 2014 Initiative-71 was a voter-approved ballot initiative in the District of Columbia that legalized recreational use of cannabis and made it legal for a person 21 and older to possess up to 2 ounces and allowed personal cultivation of up to six plants per house or dwelling unit.  It did not authorize the sale or transfer for remuneration of cannabis, nor did it allow for the commercial cultivation of or manufacture of cannabis flower and other cannabis products.  The DC Government has repeatedly emphasized that commercial "gifting" is the transfer for remuneration and is illegal.  Furthermore, it is not just the retail transaction that is illegal, but the cannabis being sold in this situation is also illegal  sourced from unknown and unlicensed cultivator and manufacturers in interstate commerce from other states and foreign countries.

63.     On its own Blog, the Guys DuPont Circle Dispensary advises consumers that the claim of "gifting" is simply a trick to navigate around the law even though the DC Government has found such claims to be misrepresentations:

> To navigate these legal constraints, DC has developed a "gifting" economy where cannabis is provided as a gift along with the purchase of other legal items like art, apparel, or accessories.

64.     On its website the Guys DuPont Circle Dispensary further misrepresents its own legal status in an attempt to gain a competitive advantage:

> Q.  Is cannabis delivery and store legal in Washington DC?
> A.  Under federal law of DC, the possession of minimum marijuana for personal use under Initiative 71 (commonly known as Initiative 71) has approved the cannabis and delivery store in DC
>
> Q.  Is Mr. Nice Guys a medical or recreational cannabis store?
> A.  Both recreational and medical cannabis store.

65.    The Guys DuPont Circle Dispensary's website offers a menu of illegal cannabis for sale, including flower, pre-rolls, cartridges, edibles, topicals, tinctures and Vape Pens.  More than 82 illegal cannabis products are available for sale at the dispensary, online and for delivery.  As it claims on its website:

> Mr. Nice Guys DC Recreational Weed Dispensary in DC has a huge range of cannabis products.  Cannabis products made with strains Indica, Sativa and hybrid are available.
>                              ***
> Mr. Nice Guys DC is a recreational weed store and weed delivery in Washington, DC.  It was founded in 2014.  We are the most trusted and recommended cannabis store and weed delivery in DC.  You are welcome to our store for the in-store shopping and order pick-up.

66.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Guys DuPont Circle Dispensary Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries. Its website and inside the dispensary the Guys DuPont Circle Dispensary misrepresents that it is a legal licensed dispensary and further misrepresents the origin of the cannabis sold at the dispensary to deceive consumers and gain an unfair competitive advantage over licensed dispensaries.

67.    On October 25, 2024, Plaintiff investigated the Guys DuPont Circle Dispensary and observed the display and sale of illegal cannabis.  Additionally, Plaintiff observed that the ATM machine and POS system used by the Guys DuPont Circle Dispensary falsely state that the sales transactions at this location were being made at a different Mr. Nice Guys' unlicensed dispensary located at 1922 9th Street NW, Washington, DC 20001.  The Guy DuPont Circle Dispensary's fraudulent misuse in interstate commerce of the internet banking and POS systems were in furtherance of its sale of illegal cannabis.

68.    On November 19, 2024, Plaintiff again investigated the Guys DuPont Circle Dispensary and observed the display and sale of illegal cannabis.

69.     The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Guys DuPont Circle Dispensary.  The 1215 Connecticut Property Owner materially contributed to the Guys DuPont Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1215 Connecticut Property Owners in leasing its commercial space to the Guys DuPont Circle Dispensary the illegal cannabis sales by Guys DuPont Circle Dispensary would not have been made.

70.     The 1215 Connecticut Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 3 years were not less than $303,334 (based on the applicable annual lease rate for this space multiplied by the square footage multiplied by 3 years).

71.     The Guys Dupont Circle Dispensary's sales (diverted from the legal market) over the past 10 months are conservatively estimated at $953,330 (based on the reasonable business assumption that lease costs are approximately equal to 10% of sales). This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $238,333 (equaling 25% of estimated sales).

## C.  1470 CHURCH PROPERTY OWNER – GUYS LOGAN CIRCLE DISPENSARY

72.     Defendant Anfield 1470 Church LLC ("1470 Church Property Owner") leased 2115 sf of commercial space to Defendant Power of Plants LLC t/a Mr. Nice Guys ("Guys Logan Circle Dispensary") who operates an illegal dispensary at that location. A-frame signs on the sidewalk made clear the presence on an illegal cannabis dispensary and the entry into the store makes it very clear that the only purpose of the store was to sell cannabis. According to Costar, the rent

for this commercial space is estimated at $48-$58/sf; ALCE uses $58/sf as the most likely rate under the factual circumstances of this lease in its calculation of the property owner profits.

73.     The 1470 Church Property Owner intentionally leases its commercial space for the sale of illegal cannabis.  Based on public data this lease began between April 1, 2022 and December 1, 2022. (ALCE uses 2 years and 8 months in the calculations of rents paid the property owner). On December 5, 2022, the 1470 Church Property Owner and the dispensary applied for a Certificate of Occupancy (CO2300654) to use the property for "Marijuana Retail." However, when the DC Zoning Office requested the property owner and dispensary for a copy of the cannabis license issued by ABCA, neither the property owner nor the dispensary were able to provide such a license because the dispensary had never applied to ABCA for one. Consequently, that CO application was denied, then in a further act of concealment, the property owner and Guys Logan Circle Dispensary submitted a new CO application (CO2301541) on March 8, 2023 claiming the property would be used as a "Retail-Plant Store".

74.     The Guys Logan Circle Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA. It has at all times operated as an unlicensed and illegal dispensary reselling illegal cannabis it purchased in interstate commerce from illegal sources in other states or foreign countries.  None of the cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia or otherwise authorized by ABCA and all the cannabis it sold was illegal in DC. Additionally, the Guys Logan Circle Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

75.     The 1470 Church Property Owner never investigated or conducted any meaningful due diligence review of the Guys Logan Circle Dispensary before entering into a lease because it

knew that this dispensary was involved in the sale of illegal cannabis.  The 1470 Church Property Owner never took any other action to determine if the Guys Logan Circle Dispensary had any legitimate (legal) business purpose.

76.    The Guys Logan Circle Dispensary extensively promotes itself and advertises in interstate commerce through its use of social media, paid internet guides to illegal dispensaries, the internet, its own blog  and its website (www.mrniceguysdc.com).  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

77.    The Guys Logan Circle Dispensary's website and social media is shared with the 4-store chain of illegal dispensaries in DC owned and operated by the Power of Plants. The 82 item menu of cannabis products is uniform for all 4 dispensaries.

78.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Guys Logan Circle Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

79.    On January 23, 2024, Plaintiff's representative visited the Guys Logan Circle Dispensary and observed the display of cannabis flowers, magic mushrooms, wax and oil pens, disposable marijuana vapes and THC and GBD gummies for sale .  Also, the ATM in the dispensary did not give receipts in possible violation of federal banking laws.

80.    On August 16, 2024, Plaintiff again investigated the Guys Logan Circle Dispensary and observed the display and sale of illegal cannabis.  Additionally, Plaintiff observed that the ATM machine and POS system used by the Guys Logan Circle Dispensary falsely stated that the sales transactions at this location were instead being made at a different Mr. Nice Guys' unlicensed dispensary located at 1922 9th Street NW, Washington, DC 20001.  The Guy DuPont Circle

Dispensary's misuse in interstate commerce of the internet banking and POS systems were in furtherance of its sale of illegal cannabis.

81.     The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Guys Logan Circle Dispensary.  The 1470 Church Property Owner materially contributed to the Guys Logan Circle Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1470 Church Property Owner in leasing their commercial space to the Guys Logan Circle Dispensary the illegal cannabis sales by Guys Logan Circle Dispensary would not have been made.

82.     The 1470 Church Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/8 months is $327,120 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/8 months).

83.     The Guys Logan Circle Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/8 months are conservatively estimated at $3,271,200 (based on the reasonable business assumption that lease costs approximately equal 10% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $817,800 (equaling 25% of estimated sales).

### D.  409 8TH PROPERTY OWNER – GUYS CAPITOL HILL DISPENSARY

84.     Defendant 8th Street Dev LLC ("409 8th Property Owner") leases 1350 sf of commercial space (500sf on 1st Floor and 850sf on 2nd Floor) to Power of Plants LLC t/a Mr. Nice Guys ("Guys Capitol Hill Dispensary") who operates an illegal cannabis dispensary at that location. According to Costar, the rent for this commercial space for the 1st Floor space was between $70-

$80/sf and $49.36/sf for the 2nd Floor space, ALCE uses $70/sf for the 1st floor and $49.36/sf for

the 2nd Floor in its calculation of the property owner's profits.

85.    The 409 8th Property Owner intentionally leased its commercial space for the sale of

illegal cannabis.   The dispensary moved into the 2nd Floor space on July 16, 2021, and into the

1st floor space on October 27, 2021. When the Guys Capitol Hill Dispensary and property owner

applied for a Certificate of  Occupancy (CO2102984) they misrepresented to the DC Zoning

Office that this commercial space was licensed as a Medical Marijuana Dispensary under the

laws of the District of Columbia.  And, on August 8, 2021 when the Certificate of Occupancy

was issued by the DC Zoning Office, it was specifically conditioned as follows:

> This certificate is granted solely to the named entity; no transfer of this
>  certificate of occupancy shall be allowed to any other person, business
> or entity without the express authorization of the Department of Health
> [predecessor agency to ABCA].  **If the property ceases to be used as an
> authorized medical marijuana dispensary** or if the dispensary's registration
> is revoked by the Department of Health, this certificate shall be returned
> to the Department of Consumer and Regulatory Affairs.

86.    Neither the property owner nor Power of Plants LLC ever applied to the Department of

Health (or to its successor agency, ABCA) for a license to operate a medical marijuana

dispensary at this location.  This appears to have been a complete misrepresentation by Guys

Capitol Hill Dispensary to suggest in any way that it ever had any legal authorization in DC to

operate a cannabis dispensary here.  Furthermore, the owner of the property was fully aware that

no license was ever issued by the Department of Health or ABCA for Guys Capitol Hill

Dispensary to operate a cannabis dispensary at this location.

87.    On or about August 20, 2021, the DC Metropolitan Police Department executed search

warrants for illegal cannabis and cannabis products on the property leased to Guys Capitol Hill

Dispensary. On information and belief, the police seized illegal cannabis plus cash at this location.

88.    The current owner of the property, the 409 8th Property Owner, appears to have purchased the property on or about August 31, 2022 (2 years/3 months ago), and even minimal due diligence would have indicated that there was never a license issued to operate a legal cannabis dispensary at this location and that Guys Capitol Hill Dispensary was unlicensed and operating an illegal cannabis dispensary that sold illegal cannabis.

89.    The Guys Capitol Hill Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA (or its predecessor agency, the Department of Health).  At all times it has operated as an unlicensed dispensary. None of the cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and was purchased by Guys Capitol Hill Dispensary in interstate commerce from unknown illegal sources from other states or foreign countries. Additionally, the Guys Logan Circle Dispensary relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

90.    The 409 8th Property Owner never investigated or conducted any meaningful due diligence review of the Guys Capitol Hill Dispensary before entering into a lease because it knew that this dispensary was not licensed and would be involved in the sale of illegal cannabis. The 409 8th Property Owner never took any other action to determine if the Guys Capitol Hill Dispensary had any legitimate (legal) business purpose.

91.    The Guys Capitol Hill Dispensary extensively promotes itself and advertises in interstate commerce through its use of social media, paid internet guides to illegal dispensaries, the internet, its own blog  and its website (www.mrniceguysdc.com).  It used the internet to falsely

promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

92.     The Guys Capitol Hill Dispensary's website and social media is shared with the 4-store chain of illegal dispensaries in DC owned and operated by the Power of Plants. The 82 item menu of illegal cannabis products is uniform for all 4 dispensaries.

93.     Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Guys Capitol Hill Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

94.     On January 24, 2024, and February 2, 2024, Plaintiff investigated the Guys Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

95.     The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Guys Capitol Hill Dispensary.  The 409 8th Property Owner materially contributed to the Guys Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 409 8th Property Owner in leasing its commercial space to the Guys Capitol Hill Dispensary, the illegal cannabis sales by  Guys Capitol Hill Dispensary would not have been made.

96.     The 409 8th Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/3 months is $173,151 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/3 months).

97.     The Guys Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/3 months are conservatively estimated at $1,731,510 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This

level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and

other expenses would result in estimated profits of $432,877 (equaling 25% of estimated sales).

### E.  1822 9TH PROPERTY OWNER – GUYS U STREET DISPENSARY

98.    Defendant TDM LLC ("1922 9th Property Owner") leases 900 sf of commercial space to

Defendant Power of Plants LLC t/a Mr. Nice Guys ("Guys U Street Dispensary") who operates

an illegal cannabis dispensary at that location.   According to Costar, the rent for this location is

$48.72/sf and the lease to Guys U Street Dispensary began March 1, 2020.

99.    The 1922 9th Property Owner intentionally leases its commercial space for the sale of

illegal cannabis.   Based on the execution of search warrants by the DC Metropolitan Police

Department for illegal cannabis at this location on August 20, 2021, it is apparent that the 1922

9th Property Owner was fully aware as to the illegal cannabis sales being make at its property;

nevertheless, even after this raid the 1922 9th Property Owner continued to lease space to Guys U

Street Dispensary.

100.    The  Guys U Street Dispensary never applied for even a basic general business license at

this location, nor did the 1922 9th Property Owner ever submit or require a Certificate of

Occupancy on the space leased to Guy U Street Dispensary.

101.    The Guys U Street Dispensary does not have nor has it ever had a cannabis retailer

license issued by ABCA (or its predecessor agency, the Department of Health).  At all times it

has operated as an illegal dispensary selling illegal cannabis that it purchased in interstate

commerce from unknown illegal sources in other states or foreign countries. None of the

cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia; consequently all cannabis sold from this location was

illegal. Additionally, the Guys U Street Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

102.    The 1922 9th Property Owner never investigated or conducted any meaningful due diligence review of the Guys U Street Dispensary before entering into a lease because it knew that this dispensary was not licensed and would be involved in the sale of illegal cannabis.  The 1922 9th Property Owner never took any other action to determine if the Guys U Street Dispensary had any legitimate (legal) business purpose.

103.    The Guys U Street Dispensary extensively promotes itself and advertises in interstate commerce through its use of social media, paid internet guides to illegal dispensaries, the internet, its own blog  and its website (www.mrniceguysdc.com). It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

104.    The Guys U Street Dispensary's website and social media is shared with the 4-store chain of illegal dispensaries in DC owned and operated by the Power of Plants. The 82 item menu of cannabis and cannabis products is uniform for all 4 dispensaries.

105.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Guys U Street Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

106.    On January 23, 2024, and March 6, 2024, Plaintiff investigated the Guys U Street Dispensary and observed the display of cannabis for sale.  As with all the Mr. Nice Guys' dispensaries, the logo is on the front door and on a sign about the transom of the entryway. The Guys U Street Dispensary closed in September, 2024, but this does not affect its liability for the harm caused ALCE members and the legal cannabis market during the time that the Guys U

Street Dispensary was operational.  Furthermore, it continues to use ATM and POS debit and credit card processing registered at this location to process illegal sales at other Mr. Nice Guys' locations.

107.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Guys U Street Dispensary.  The 1922 9th Property Owner materially contributed to the Guys U Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1922 9th Property Owner in leasing its commercial space to the Guys U Street Dispensary, the illegal cannabis sales by Guys U Street Dispensary would not have been made.

108.    The 1922 9th Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/9 months  $120,582 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/9 months).

109.    The Guys U Street Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,205,820 (based on the reasonable business assumption that lease costs are approximately 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $301,455 (equaling 25% of estimated sales).

### F.    DEFENDANTS GREGORY DAVID WIMSATT AND DAMION WEST

110.    Defendants Gregory David Wimsatt ("Wimsatt") and Damion West ("West") are the owners and managing members of Defendant Power of Plants LLC which is their alter ego.

111.    Power of Plants LLC is the business conduit for Defendants Wimsatt and West who direct

and control its unlicensed and illegal cannabis operations in the District of Columbia and its

interstate sales and deliveries of illegal cannabis.

112.    There is a commingling of business records between Defendants Wimsatt and West and

the four unlicensed cannabis dispensaries they own through Power of Plants LLC (Guys DuPont

Circle Dispensary, Guys Logan Circle Dispensary, Guys Capitol Hill Dispensary and Guys U

Street Dispensary) and no corporate veil should exist to insulate Defendants Wimsatt and West

from the liability of Power of Plants LLC.

### G.    2206 18TH PROPERTY OWNER – AA ADAMS MORGAN DISPENSARY

113.    Defendant WY18 Retail LLC ("2206 18th Property Owner") leased 985 sf of commercial

space to Defendant American Legends LLC t/a AA Gallery ("AA Adams Morgan Dispensary")

who operated an unlicensed and illegal cannabis dispensary at that location.  The 2206 18th

Property Owner sold purchased this property on or about June 20, 2024, to 18th Street Investment

JGM Three LLC who appears to have terminated the lease with AA Adams Morgan Dispensary

which limits the property owner's and dispensary's potential equitable damages to disgorgement

of their profits for the period of time (2 years/8 months) before the dispensary's illegal operations

ceased.  According to Costar, the market rent for this property was $15/sf which ALCE uses in its

calculation of the property owner's profits.

114.    The 2206 18th Property Owner intentionally leased its commercial space for the sale of

illegal cannabis.  On November 13, 2019, the 2206 18th Property Owner filed for a Certificate of

Occupancy (CO00480) on this commercial space claiming that the AA Adams Morgan

Dispensary would be operating a "Retail Shoe Store" at this location. An investigation by the

Department of Buildings (Office of Zoning) quickly determined that this was a ruse. On

December 12, 2019, a warning within the zoning office was posted not to issue a CO without the

approval of Deputy Zoning Administrator or the Supervisor Zoning Technician -Special

Investigations which was investigating AA Adams Dispensary and its parent company, All

American Papers LLC. A CO was never issued but is apparent that the 18th Property Owner was

fully aware that AA Adams Morgan Dispensary was an unlicensed cannabis dispensary under

investigation. The fact is that DC law would never have permitted the operation of a legal

cannabis dispensary across the street from a recreational center.

115.    The AA Adams Morgan Dispensary had a basic business license at this location

(400322800531) but it never applied to ABCA for a license to operate a cannabis retailer. The

2206 18th Property Owner was fully aware that the intended activity was illegal and it knew the

consequences of its actions. The 2206 18th Property Owner initially sought to conceal from the

government authorities the use of the premises by the dispensary by claiming the space was to be

used as a Retail Shoe Store when in 2019 it applied for a CO.

116.    The AA Adams Morgan Dispensary does not have nor has it ever had a cannabis retailer

license issued by ABCA. At all times it operated as an illegal dispensary selling illegal cannabis

that it purchased in interstate commerce from unknown illegal sources in other states or foreign

countries. None of the cannabis sold by AA Adams Morgan Dispensary was cultivated or

manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently

all cannabis sold from this location was illegal. Additionally, the AA Adams Morgan Dispensary

relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell

illegal cannabis in DC.

117.    The 2206 18th Property Owner never investigated or conducted any meaningful due

diligence review of the AA Adams Morgan Dispensary before entering into a lease because it

knew that this dispensary was involved in the sale of illegal cannabis.  The 2206 18th Property Owner never took any other action to determine if the AA  Adams Morgan Dispensary had any legitimate (legal) business purpose.

118.    On May 14, 2024, Plaintiff's counsel sent the 2206 18th Property Owner a letter stating that by leasing to an illegal dispensary, the 2206 18th Property Owner was breaching its duty of care to the legal cannabis market in the District of Columbia and causing it harm. Less than a month after receiving this letter, the 2207 18th Property Owner sold the property to limit its liability to ALCE.

119.    Defendants American Legends LLC and American Papers LLC, until recently operated a small chain of illegal cannabis dispensaries in DC: (i) AA  Adams Morgan Dispensary; (ii) AA Truxton Circle Dispensary, (iii) AA H Street Dispensary; and (iv) AA U Street Dispensary. Although there were individual store internet promotions and advertising, the bulk of the internet advertising and promotions was a collective chain effort.  This 4-store chain advertised and promoted itself and its illegal cannabis in interstate commerce using social media (Instagram (@allamericancbddc), Facebook (All American Main), X (All American DC)), paid internet guides to illegal dispensaries (Toker's Guide, Yelp, Cannapages.com, AllBud.com), internet searches and posting (Google Search, MapQuest) and its own website (www.aapapers.comm) to deceive or confuse consumers regarding the legality of the dispensary and the products it sold in order to gain an unfair competitive advantage over the legal market.

120.    The AA chain's website contain a menu that lists a large number of illegal cannabis and cannabis products for sale, pickup and delivery.  Products include cannabis flower, vape pens, gummies, mushroom chocolates, wax, pre-rolls, edibles, diamonds, CBD, infused drinks, and THC cartridges. The website connects to another online site for ordering and deliveries

(https://shop.aapapers.delivery/bakery). The AA chain used the internet to falsely promote and

advertise itself as operating legal dispensaries and to misrepresent the nature, characteristics,

qualities, and legality of the cannabis sold at its dispensaries to confuse or deceive consumers.

121.    Across the internet this AA-chain continually promoted itself as "I-71" complaint as a

means of trying to represent itself as a legal dispensary in DC with legal products.  These claims

of being I-71 complaint are false indications to consumers that it operates as a legal dispensary in

DC and that its cannabis and cannabis products are authorized by the DC Government.  Neither

is true. There is no such thing as a commercial retailer in the District of Columbia being "i71

complaint" except in accordance with the DC Code and ABCA regulations. Initiative 71 did not

establish a some separate standard and the DC Government has repeatedly indicated that

commercial "gifting" as practiced by dispensaries like AA Gallery Adams Morgan Dispensary

are illegal, and not to lose sight of the related problem, the cannabis sold by the dispensary are

also illegal.

122.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed

dispensaries (like AA  Adams Morgan Dispensary) as premium, legal products to gain an unfair

competitive advantage over licensed dispensaries.

123.    On February 1, 2024, Plaintiff investigated the AA  Adams Morgan Dispensary and

observed the display and sale of illegal cannabis. After the sale of the property the illegal

dispensary has been closed.

124.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost

commercial sales that were instead made by AA  Adams Morgan Dispensary.  The 2206 18th

Property Owner materially contributed to the AA  Adams Morgan Dispensary's deception of

consumers regarding its own legal status as well as the legal status under DC law of the cannabis

it is selling consumers. Without the material participation of the 2206 18th Property Owner in leasing its commercial space to the AA Adams Morgan Dispensary, the illegal cannabis sales by AA Adams Morgan Dispensary would not have been made.

125.    The 2206 18 Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries for the 2 year/8 month-period prior to its closing is $39,400 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/8 months).

126.    The AA Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/8 months are conservatively estimated at $394,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales). This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $98,500 (equaling 25% of estimated sales).

### H.    1334 N. CAPITOL PROPERTY OWNER – AA TRUXTON CIRCLE DISPENSARY

127.    Defendants Louise D'Costa-Brown and Brian Brown ("1334 N. Capitol Property Owner") leased 1696 sf of commercial space on the 1st Floor to Defendant All American Papers LLC t/a AA Bakery ("AA Truxton Circle Dispensary") who operated an illegal dispensary at that location until recently. Additionally, the 1334 N. Capitol Property Owner leases 1696 sf of commercial space on the lower level to North Capitol Juice LLC t/a Lucid X Dreams ("Juice Truxton Circle Dispensary"). According to Costar, the estimated rent on this property is $31-$38/sf, ALCE uses $31/sf for the lower level space and $38/sf for the 1st floor space in the calculations of the property owner's profits.

128.    Although the 1334 N. Capitol Property Owner eventually evicted the AA Truxton Circle Dispensary after receiving a letter from Plaintiff's counsel, the property owners still are

responsible for the damages they caused the legal cannabis market for the years they allowed it to operate on their property. Additionally, even after evicting the AA Truxton Circle Dispensary in August, 2024, the 1334 N. Capitol Property Owner continued to lease the lower level to the Juice Truxton Circle Dispensary. The 1334 N. Capitol Property Owner never sought to evict the Juice Truxton Circle Dispensary, which continues to operate illegally at this location with the consent of the property owner.

129.    The 1334 N. Capitol Property Owner intentionally leased its commercial space for the sale of illegal cannabis. The facts indicate the AA Truxton Circle Dispensary had been operating at this location for many years, and at a minimum, Plaintiff is able to show that this dispensary obtained a general business license at this location (4003119000992) on February 1, 2021. This was a busy dispensary and the 1334 N. Capital Property Owner lived only a block away and had a daily opportunity to observe the illegal cannabis sales taking place. It is assumed that the property owner began leasing to the Juice Truxton Circle Dispensary around the same time in February, 2021. The 1334 N. Capitol Property Owner was motivated to lease this space to unlicensed cannabis dispensaries, and it assumed this risk.

130.    Neither the AA Truxton Circle Dispensary nor the Juice Truxton Circle Dispensary have ever had a cannabis retailer license issued by ABCA. At all times they operated as illegal dispensaries selling illegal cannabis that they purchased in interstate commerce from unknown illegal sources in other states or foreign countries. None of the cannabis sold was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal. Additionally, these dispensaries relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

131.    The 1334 N. Capitol Property Owner never investigated or conducted any meaningful due diligence review of the AA  Truxton Circle Dispensary or the Juice Truxton Circle Dispensary before entering into leases because it knew that these dispensaries were involved in the sale of illegal cannabis.  Anyone walking by the dispensaries would immediately know that they were cannabis shops.  Sales transactions are done through a Teller window but the prices for the illegal cannabis are posted on an A-frame board behind the Teller window and some cannabis products are also visible.

132.    The AA Truxton Circle Dispensary promoted itself and advertised in interstate commerce using all the same social media , paid guides, internet posting and its own website as summarize above.  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

133.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like AA  Truxton Circle Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

134.    On February 1 and 2, 2024, Plaintiff investigated the AA Truxton Circle Dispensary observed the display and sale of illegal cannabis. This dispensary was closed in August, 2024.

135.    On August 20, 2024, Plaintiff investigated the Juice Truxton Circle Dispensary and observed the display and sale of illegal cannabis.

136.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by AA  Truxton Circle and Juice Truxton Circle Dispensary.  The 1334 N. Capitol Property Owner materially contributed to the AA Truxton Circle Dispensary and Juice Truxton Circle Dispensary's deception of consumers regarding their

own legal status as well as the legal status under DC law of the cannabis they were selling consumers. Without the material participation of the 1334 N. Capitol Property Owner in leasing its commercial space to these unlicensed dispensaries, the illegal cannabis sales by AA Truxton Circle Dispensary and Juice Truxton Circle Dispensary would not have been made.

137.    The 1334 N. Capitol Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries for the periods they were open in the past 3 years (3 years for the Juice Truxton Circle Dispensary and 2 years/9 months for the AA Truxton Circle Dispensary prior to its closing) is $334,954 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/9 months for the 1st Floor space and 3 years for the lower level space).

138.    The AA Truxton Circle Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/9 months are conservatively estimated at $1,772,260 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales). This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $443,065 (equaling 25% of retail sales).

### I.  1908 9TH PROPERTY OWNER – AA U STREET DISPENSARY

139.    Defendants Chukwujindu Victor Mbakpuo and Ndidiamaka E. Mbakpuo ("1908 9th Property Owner") leased 790 sf on the lower level of their property (with direct entry to 9th Street) to American Legends LLC t/a All American CBD ("AA U Street Dispensary") who operated an illegal dispensary at that location. According to Costar the estimated rent for this property is $35-$43/sf; ALCE uses $43/sf in its calculation of the property owner's profits as the most reasonable rate under the factual circumstances of this lease.

140.    The 1908 9th  Property Owner has intentionally leased its commercial space for the sale

of illegal cannabis.  All American Papers LLC obtained a general business license

(400319802811) on March 1, 2019 at this location which supports a finding that the 1908 9th

Property Owner had been leasing this property since that date.  The 1908 9th Property Owner was

motivated to lease to AA U Street Dispensary to obtain  higher lease rates for the risks of leasing

to an illegal dispensary.

141.    The AA U Street Dispensary never had a cannabis retailer license issued by ABCA.  At

all times it has operated as an illegal dispensary selling illegal cannabis it purchased in interstate

commerce from unknown illegal sources in other states and foreign countries. None of the

cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia; consequently all cannabis that sold from this location

was illegal. Additionally, the AA U Street Dispensary relied on the use in interstate commerce of

ATM and POS debit and credit card processing to sell illegal cannabis in DC.

142.    The 1908 9th Property Owner never investigated or conducted any meaningful due

diligence review of the AA U Street Dispensary before entering into a lease because it knew that

this dispensary was involved in the sale of illegal cannabis.  The 1908 9th Property Owner never

took any other action to determine if the AA U Street Dispensary had any legitimate (legal)

business purpose.

143.     The AA  U Street Dispensary promotes and advertises in interstate commerce using all

the same social media , paid guides, internet posting and its own website.  It used the internet to

falsely promote and advertise itself as a legal dispensary and to misrepresent the nature,

characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

144.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed

dispensaries (like AA U Street Dispensary) as premium, legal products to gain an unfair

competitive advantage over licensed dispensaries.

145.    On February 1, 2024, Plaintiff investigated the AA U Street Dispensary and confirmed

that unauthorized cannabis and magic mushrooms were being sold at that dispensary which was

being misrepresented as a legally authorized dispensary. In front of the front door to the

dispensary, there is a tall (8 to 10 feet) inflatable Tube Man bouncing around to attract attention.

146.    On February 28, 2024, ABCA issued a warning letter to the AA U Street Dispensary

stating that ABCA's investigator on February 28, 2024, had "observed unlicensed and illegal

cannabis operations in violation of Chapter 16B of title 7 of the D.C. Official Code and D.C.

Official Code §48-904.01", including "illegally selling cannabis or knowingly engaging or

attempting to engage in the purchase, sale, exchange, or delivery cannabis (D.C. Official Code

§§7-1671.08(f), 48-904.01(a)(1)(B))."

147.    ABCA's February 28, 2024 letter concluded by stating:

> Please note that the issuance of this warning letter does not protect
> you from prosecution by other federal or District law enforcement
> agencies or from any lawsuits that may be filed by private actors
> against you.  Therefore, you are putting yourself at risk if you
> continue to engage in this illegal conduct or continue to allow it
> to occur.

148.    The AA U Street Dispensary ignored ABCA's warning letter, forcing ABCA on

September 5, 2024, to issue a Cease and Desist Order which closed this illegal dispensary.

149.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost

commercial sales that were instead made by AA U Street Dispensary.  The 1908 9th Property

Owner materially contributed to the AA U Street Dispensary's deception of consumers regarding

its own legal status as well as the legal status under DC law of the cannabis it was selling

consumers.  Without the material participation of the 1908 9th Property Owner in leasing their

commercial space to the AA  U Street Dispensary, the illegal cannabis sales by  AA U Street

Dispensary would not have been made.

150.    The 1908 9th Property Owner's lease revenues/profits from the lease of this commercial

space to AA U Street Dispensary for the 2 year/10 month period prior to being closed in

September, 2024, is $96,249 (based on the applicable lease rate for this space multiplied by the

square footage multiplied by 2 years/10 months).

151.    The AA U Street Dispensary's sales of illegal cannabis (diverted from the legal market)

over the past 2 years/10 months are conservatively estimated at $962,490 (based on the

reasonable business assumption that lease costs are approximately 10% of sales).  This level of

sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other

expenses would result in estimated profits of $240,622 (equaling 25% of estimated sales).

### J.  504 H STREET PROPERTY OWNER – AA  H STREET DISPENSARY

152.    Defendant Rahimi Investments Inc. ("504 H Street Property Owner") leased 1450 sf of

commercial space to Defendant American Legends t/a All American Papers ("AA  H Street

Dispensary") who operated an illegal dispensary at that location.  According to Costar, the rent

for this commercial space is $38-$47/sf; ALCE used $44.48/sf in its calculations of the property

owner's profits as the most reasonable rate under the circumstances of this lease.

153.    The 504 H Street Property Owner intentionally leased its commercial space for the sale of

illegal cannabis.  The AA H Street Dispensary has been operating at this location since at least

January 1, 2020 when a general business license (4003208017137) was issued to it.  The 504 H

Street Property Owner sought to conceal the nature of the business being conducted at this

location from DC Zoning by never filing for a Certificate of Occupancy. The 504 H Street Dispensary was motivated to lease this space for an illegal dispensary in order to obtain higher lease rates, was fully aware that the intended activity was illegal and were aware of the consequences of its actions.

154.    The AA H Street Dispensary never had a cannabis retailer license issued by ABCA. At all times it has operated as an unauthorized, unlicensed illegal dispensary selling illegal cannabis that it purchased in interstate commerce from illegal sources in other states or foreign countries. None of the cannabis sold by the dispensary was authorized by ABCA and was not cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis that sold from this location were illegal. Additionally, the AA H Street Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

155.    The 504 H Street Property Owner never investigated or conducted any meaningful due diligence review of the AA H Street Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis. The 504 H Street Property Owner never took any other action to determine if AA H Street Dispensary had any legitimate business purpose.

156.    The AA H Street Dispensary promotes and advertises in interstate commerce using all the same social media , paid guides, internet posting and its own website. It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

157.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like AA  H Street Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

158.    On February 17, 2024, Plaintiff investigated the AA  H Street Dispensary and observed the sale of illegal cannabis.  Additionally, AA  H Street Dispensary processes payments on its ATM and POS system in interstate commerce using a fake address as its location (1404 N. Capitol Street NW).

159.    On July 3, 2024, the Alcoholic Beverage and Cannabis Board ("ABCB") issued its Order to Cease and Desist Order No. 2024-473 in *In the Matter of American Legends, LLC t/a All American Papers (504 H Street NE, Washington, DC 20002,* Case No. 24-ULC-00002.  In its order ABCB found that "All American Papers and its agents operate an unlicensed establishment engaged in the illegal sale and distribution of cannabis." As a consequence it ordered the operators of All American Papers (Lee Pauly, JP Therman and Ramon Roque)  and Rhami Investments, Inc. (*i.e.* the 504 H Street Property Owner) to "**CEASE AND DESIST** immediately the illegal purchase, sale, exchange, delivery, or any other form of commercial transaction involving cannabis.  This order confirms the before-stated factual assertions with respect to the illegal sales of cannabis taking place on this property causing harm to the legal cannabis market.

160.    On August 7, 2024, ABCB modified its July 3, 2024 order to grant the 504 H Street Property Owner, a 60-day extension to take action against the illegal dispensary in landlord-tenant court.  However, eviction of this illegal dispensary will not absolve the 504 H Street Property Owner of its liability to the legal cannabis market and ALCE for all past periods.

161.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by AA  H Street Dispensary.  The 504 H Street Property

Owner materially contributed to the AA H Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 504 H Street Property Owner in leasing its commercial space to the AA H Street Dispensary, the illegal cannabis sales by AA H Street Dispensary would not have been made.

162. The 504 H Street Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $193,488 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

163. The AA H Street Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,934,880 (based on the reasonable business assumption that lease costs are approximately 10% of sales). This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses result in estimated profits of $483,720 (equaling 25% of estimated sales).

### K.    DEFENDANT RAMON ROQUE

164. Defendant Ramon Roque ("Roque") is the managing member of Defendants American Legends LLC and All American Papers LLC which function as his alter ego.

165. The unlicensed and illegal cannabis dispensaries owned through American Legends LLC and All American Papers LLC (AA Adams Morgan Dispensary, AA Truxton Circle Dispensary, AA U Street Dispensary and AA H Street Dispensary) are business conduits for Defendant Roque who directed and controlled these unlicensed and illegal cannabis operations in the District of Columbia and their interstate sales and deliveries of illegal cannabis.

166.    There is a commingling of business records between Defendant Roque and American

Legends LLC and All American Papers LLC, and no corporate veil should exist to insulate

Defendant Roque from the liability of these other defendants.

## L.  406 8TH PROPERTY OWNER – MOTHER CAPITOL HILL DISPENSARY

167.    Defendant Jemal's Niti LLC ("406 8th Property Owner") leased 1274 sf of commercial

space to Defendant Mother Blossom LLC ("Mother Capitol Hill Dispensary")(aka Hawkesbay)

who operated an illegal dispensary at that location.  According to Costar, the starting rent under

this lease was $73/sf, and the lease was signed on December 21, 2021 with a start date of April 1,

2022.  Costar further indicates that the true owner of this property is Douglas Development

Corporation.

168.    The 406 8th Property Owner intentionally leased its commercial space for the sale of

illegal cannabis.  The 406 8th Property Owner is owned by the owners of Douglas Development

Corporation which through other affiliates owns multiple properties leased to illegal cannabis

dispensaries in DC.

169.    The 406 8th Property Owner sought to conceal from the zoning office the business

function of the Mother Capitol Hill Dispensary by claiming in its late filed application for the

Certificate of Occupancy (CO2301528-issued April 4, 2023) that the commercial space would

only be used for a Retail Variety Store.

170.    The 406 8th Property Owner is owned by individuals with substantial experience in the

leasing of commercial space in the District of Columbia to unlicensed, illegal cannabis

dispensaries.  The 406 8th Property Owner, the 2206 18th Property Owner and the 1236 H Street

Property Owner all have the same principal place of business at 655 New York Avenue NW,

Suite 830, Washington, DC 20001-5795.  All three of these LLCs are owned by Douglas Jemal,

Norman Jemal or Morris Matthew Jemal, individuals with extensive experience in commercial real estate in DC.

171.    After the 406 8th Property Owner's receipt of May, 2024 letter from Plaintiff's attorney advising of their liability for leasing to unlicensed and illegal cannabis dispensaries, the Mother Capitol Hill Dispensary was closed in August, 2024, but that itself does not negate the past harm done to the legal cannabis market for which the 406 8th Property Owner remains liable (for the period of 2 years/4 months).

172.    The Mother Capitol Hill Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis that the Mother Capitol Hill Dispensary purchased in interstate commerce from illegal sources in other states or foreign countries.  None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal. Additionally, the Mother Capitol Hill Dispensary relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

173.    The 406 8th Property Owner never investigated or conducted any meaningful due diligence review of the Mother Capitol Hill Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  The primary purpose of the dispensary is to sell cannabis illegally and the 406 8th Property Owner understood this and never took any other action to determine if the dispensary any legitimate (legal) business purpose.

174.    The Mother Capitol Hill Dispensary promoted itself and advertised in interstate commerce through its extensive use of social media Instagram(@motherblossomdc), Tik Tok

(Mother Blossom DC), paid guides on the internet to illegal dispensaries (Toker's Guide, Leafy, Yelp, and TrustedBud.com) and numerous internet posting and search sites (Google Search, Birdeye.com, TripAdvisor, etc.) and its own website (www.motherblossom.net) that encouraged customers to use to place advance orders to be picked up. It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

175.    Spread throughout its internet ads and postings the Mother Capitol Hill Dispensary constantly claimed to be "I-71 complaint offering a wide variety of cannabis gifts" as part of its efforts to represent itself as a legal dispensary selling legal products. Claims of being I-71 complaint itself have been recognized by ABCB as false advertising in violation of DC Code. This dispensary diverted revenues from the legal market by its false claims that it was legal and the products it sold were also legal.

176.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Mother Capitol Hill Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

177.    On January 25, 2024, Plaintiff investigated the Mother Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

178.    On February 2, 2024, Plaintiff again investigated the Mother Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

179.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Mother Capitol Hill Dispensary. The 406 8th Property Owner materially contributed to the Mother Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis

it is selling consumers.  Without the material participation of the 406 8th Property Owner in leasing its commercial space to the Mother Capitol Hill Dispensary, the illegal cannabis sales by Mother Capitol Hill Dispensary would not have been made.

180.    The 406 8th Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/4 months is $217,004 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/4 months).

181.    The Mother Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/4 months are conservatively estimated at $2,170,040 (based on the reasonable business assumption that lease costs are approximately 10% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $542,510 (equaling 25% of estimated sales).

## M.  1236 H STREET DISPENSARY – GIVING H STREET DISPENSARY

182.    Defendant Jemal's Arcade LLC ("1236 H Street Dispensary") leases 1650 sf of commercial space to Defendant Gvn3 LLC t/a Giving Tree ("Giving H Street Dispensary") who operates an unlicensed and illegal dispensary at that location.  According to Costar the rent for this space is estimated at $40-$48/sf; ACLE uses $48/sf in its calculation of the property owner's profits as the most likely rate under the factual circumstances of this lease.  Costar further indicates that the true owner of this property is Douglas Development Corporation.

183.    The 1236 H Street Property Owner intentionally leases its commercial space for the sale of illegal cannabis.  It appears that the 1236 H Street Property Owner first leased to the Giving H Street Dispensary on or about October 14, 2021 when it appears that the property owner was issued a Certificate of Occupancy (CO220046) for the commercial space that was leased to the Giving H Street Dispensary.  Both the property owner and dispensary sought to conceal from

government zoning authorities the intended use of the property as an unlicensed, illegal cannabis dispensary by claiming in the CO application that the lease space would be used as a Retail Poster and Print Shop.  The 1236 H Street Property Owner was  motivated to lease to Giving H Street Dispensary (which was a new LLC that had only recently been formed in DC (April 7, 2021) to receive higher lease payments for the legal risks involved with its liability in leasing to an unlicensed, illegal cannabis dispensary. And, as discussed above, the owners of the 1236 H Street Property Owner had extensive experience in leasing to unlicensed, illegal cannabis dispensaries in the District of Columbia.

184.    The Giving H Street Dispensary never had a cannabis retailer license issued by ABCA. At all times it has operated as an illegal dispensary selling illegal cannabis that the Giving H Street Dispensary purchased in interstate commerce from unknown illegal sources in other states or foreign countries. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal.  Additionally, the Giving H Street Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

185.    The 1236 H Street Property Owner never investigated or conducted any meaningful due diligence review of the Giving H Street Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell cannabis illegally and the 1236 H Street Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.

186.    The Giving H Street Dispensary falsely promotes and advertises in interstate commerce through its use of social media (X(@givingtreedc)), paid internet guides to illegal dispensaries (Toker's Guide, Leafy, Trustedpilot.com, Gentlemantoker.com, Dispensaries.com, Cannabisdirectory.com, thecbd.co, Medium.com, Nextdoor.com, Aboutme.com, etc.), numerous other internet search and posting sites (Google Search, Mjlink.com, 420magazine.com, iheartjane.com) and its own website (www.givingtreedispensary.com).   It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

187.    The Giving H Street Dispensary falsely promise itself as a legal "gifting" shop and that authorized to "gift" its illegal products even though it is not licensed in DC to sell any type of cannabis to customers.  These false representations are intended to gain a competitive advantage over the legal cannabis market.

> In Washington, DC, the "gifting" model is a workaround that allows the exchange of marijuana products between adults over the age of 21 without payment for the products between adults over the age of 21 without payment for the product itself.
> Under the law, it is legal for adults to gift up to 1 once to another adult.  The gifting model involves a transaction where the adult giving the marijuana received payment for something else, such as a t-shirt or sticker, with the marijuana provided as a gift.
> Giving Tree DC is one of the most famous gifting stores in Washington, DC. Find out more about us and visit our online gifting shop.

188.    The Giving H Street Dispensary's online gifting shop is part of its website which lists more than 31 different cannabis products for sale.

189.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Giving H Street Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

190.    On February 6, 2024, Plaintiff investigated the Giving H Street Dispensary and observed the display and sale of illegal cannabis.

191.    On August 21, 2023, Plaintiff investigated the Giving H Street Dispensary and observed the display and sale of illegal cannabis.

192.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Giving H Street Dispensary.  The 1236 H Property Owner materially contributed to the Giving H Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1236 H Property Owner in leasing its commercial space to the Giving H Street Dispensary, the illegal cannabis sales by Giving H Street Dispensary would not have been made.

193     The 1236 H Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 3 years $237,600 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

194.    The Guys Logan Circle Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 are conservatively estimated at $2,376,000 (based on the reasonable business assumption that lease costs are approximately 10% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $594,000 (equaling 25% of estimated sales).

### N.  318 MASSACHUSETTS PROPERTY OWNER – FLOWERZ CAPITOL HILL DISPENSARY

195.    Defendant Quang Lienhai Living Trust ("318 Massachusetts Property Owner") leases 1800 sf of commercial space to Defendant Flowerz LLC ("Flowerz Capitol Hill Dispensary") who operates an illegal dispensary at that location.  According to Costar, the move-in date under

this lease was November 1, 2022, and the starting rent was $45/sf which is what ALCE uses in its calculation of the property owner's profits.

196.    The 318 Massachusetts Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis.  It appears that the 427 8th Property Owner first leased to the Flowerz Capitol Dispensary on or before October 17, 2022 when it registered its LLC in the District of Columbia.  This is consistent with internet posting of the dispensary from 2 years ago. The 318 Massachusetts Property Owner and the Flowerz Capitol Hill Dispensary sought to conceal from government zoning authorities what activities were being conducted at the property by filing for a Certificate of Occupancy (CO230044) on November 9, 2022 stating that the property would be used as a Retail Florist.  The property owner and dispensary were collectively motivated to use this commercial space as an unlicensed cannabis dispensary to generate illegal cannabis revenues.   The awning leading to the front entry door announces "Flowerz -Cannabis Boutique".

197.    The Flowerz Capitol Hill Dispensary never had a cannabis retailer license issued by ABCA.  At all times this dispensary operated as an  illegal dispensary selling illegal cannabis that the Flowerz Capitol Hill Dispensary purchased in interstate commerce from unknown illegal sources in other states and foreign countries. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal.  Additionally, the Flowerz Capitol Hill Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

198.    The 318 Massachusetts Property Owner never investigated or conducted any meaningful due diligence review of the Flowerz Capitol Hill Dispensary before entering into a lease because

it knew that this dispensary was unlicensed and was involved in the sale of illegal cannabis and it expected to generate significant profits. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of this unlicensed, illegal  dispensary was to sell illegal supplies of cannabis.  The 318 Massachusetts Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.

199.    The Flowerz Capitol Hill Dispensary promotes itself and advertises in interstate commerce through its extensive use of social media (Facebook (Flowerz Washington,D.C), X(@pickflowerz)), paid internet guides to illegal dispensaries (Leafy, Yelp, Mrweednearme.com), and numerous other internet posting and ads (Google Search, Capitolhillbid.org, the calmleaf.com, thefeelgood.shop/brands/flowerz, Soberish.com, etc.) and its own websites ([www.flowerzdc.com](www.flowerzdc.com)) and ([www.pickflowerz.com](www.pickflowerz.com)) that encourage customers to use to place advance orders to be picked up or delivery. It appears that Flowerz Capitol Hill Dispensary's first website ([www.flowerzdc.com](www.flowerzdc.com))  is primarily to sell THC cannabis and some hemp-derived cannabis, while the second website ([www.pickflowerz.com](www.pickflowerz.com)) appears mostly focused on its own Flowerz-branded hemp derived products.

200.    The Flowerz Capitol Hill Dispensary's first website ([www.flowerzdc.com](www.flowerzdc.com))  states that this dispensary is its flagship cannabis dispensary in Washington, DC and it "offers a variety of cannabis products, including edibles, flower, tinctures and vapes".  The online menu lists more than 76 different hemp-derived cannabis and cannabis products with photos, descriptions and pricing on each item, including Flowers (2), Pre-rolls (2), vapes (16), concentrates (1), cartridges (15), disposable vapes (6), infused drinks (5), tinctures (3), edibles (22) and gummies (4).  The various bulk of these products are packaged under their dispensary's own "Flowerz" Brand label. It appears that the dispensary sells its own "Flowerz" Brand of cannabis on a wholesale basis

since it can be found online through the calmleaf.com, thefellgood.shop, Soberish.com, and other internet sellers of cannabis products.

201.    The Flowerz Capitol Hill Dispensary's second website (www.pickflowerz.com)  offers more than 105 items mostly THC cannabis products but includes some Flowerz Brand hemp-derived products and some THC products under a second label (Karma) that also appears to be owned and promoted by the Flowerz Capitol Hill Dispensary. The online menu lists all the cannabis products for sale with photos, descriptions and pricing on each item, including pre-rolls (13), infused drinks (2),flower (19), edibles (10), gummies (9), disposable vapes (14), cartridges (9), and tinctures (3).  Everything the dispensary presents is presented as if the dispensary was a licensed dispensary and the products it sold were legal.  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

202.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Flowerz Capitol Hill Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

203.    On February 6, 2024, and on February 17, 2024, Plaintiff investigated the Flowerz Capitol Hill Dispensary observed the display and sale of illegal cannabis.

204.    On April 10, 2024, ABCA issued a warning letter to the Flowerz Capitol Hill Dispensary stating that ABCA's investigator on April 10, 2024, had "observed unlicensed and illegal cannabis operations in violation of Chapter 16B of title 7 of the D.C. Official Code and D.C. Official Code §48-904.01", including "illegally selling cannabis or knowingly engaging or attempting to engage in the purchase, sale, exchange, or delivery cannabis (D.C. Official Code §§7-1671.08(f), 48-904.01(a)(1)(B))."

205.    ABCA's April 10, 2024 letter concluded by stating:

> Please note that the issuance of this warning letter does not protect you from prosecution by other federal or District law enforcement agencies or from any lawsuits that may be filed by private actors against you.  Therefore, you are putting yourself at risk if you continue to engage in this illegal conduct or continue to allow it to occur.

206.    On August 16, 2024, Plaintiff investigated the Flowerz Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

207.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Flowerz Capitol Hill Dispensary.  The 318 Massachusetts Property Owner materially contributed to the Flowerz Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 318 Massachusetts Property Owner in leasing its commercial space to the Flowerz Capitol Hil Dispensary, the illegal cannabis sales by Flowerz Capitol Hill Dispensary would not have been made.

208.    The 318 Massachusetts Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years is $162,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years).

209.    The Flowerz Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/1 month are conservatively estimated at $1,620,000 (based on the reasonable business assumption that lease costs are approximately 10% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses result in estimated profits of $405,000 (equaling 25% of estimated sales).

### O.  DEFENDANT CHAD MICHAEL FREY

210.    Defendant Chad Michael Frey (Frey") is the only listed owner of Defendant Flowerz

LLC which on information and belief is a single member LLC.

211.    The Flowerz Capitol Hill Dispensary is the business conduit for Defendant Frey who

directs and controls its unlicensed and illegal cannabis operations in the District of Columbia and

its interstate sales and deliveries of illegal cannabis and cannabis products.

212.    There is a commingling of business records between Defendant Frey and the Flowerz

Capitol Hill Dispensary and no corporate veil should exist to insulate Defendant Frey from the

liability of the Flowerz Capitol Hill Dispensary.

### P.  637 PENNSYLVANIA PROPERTY OWNER – NKA CAPITOL HILL DISPENSARY

213.    Defendant 637-639 Pennsylvania Avenue SE LLC ("637 Pennsylvania Property Owner")

leases 1580 sf of commercial space to Defendant Seedless LLC t/a N.K.A. (No Kids Allowed)

("NKA Capitol Hill Dispensary") who operate an unlicensed, illegal cannabis dispensary at that

location. According to Costar, the rent for this commercial space is $40-$50/sf ; ALCE uses

$50/sf in its calculation of the property owner's profits as the most likely rate under the factual

circumstances of this lease.

214.    The 637 Pennsylvania Property Owner intentionally leased its commercial space for use

in the sale of illegal cannabis.  Costar's database indicates that the move-in date for the space

occupied by NKA Capitol Hill Dispensary was June 30, 2021.  The 637 Pennsylvania Property

Owner was motivated to lease the property for use as an unlicensed, illegal cannabis dispensary

as demonstrated by the fact that NKA Capitol Hill Dispensary which was not even registered as

an LLC at the time it began leasing the property.

215.    The  NKA Capitol Hill Dispensary never had a cannabis retailer license issued by ABCA.

At all times it has operated as an unlicensed, illegal dispensary selling illegal cannabis that it

purchased in interstate commerce from unknown illegal sources in other states or foreign

countries. None of the cannabis sold by the dispensary were cultivated or manufactured by

licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold

from this location was illegal. Additionally, the NKA Capitol Hill Dispensary relies on the use in

interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in

DC.

216.    On its website ([www.nokidsallowed.club](www.nokidsallowed.club)) the NKA Capitol Hill Dispensary presents

itself as a legal dispensary that is i-71 complaint:

> Unlike a DC dispensary, No Kids Allowed gifts weed for free in DC
> to residents & tourists under Initiative 71 law, showcasing how to
> get weed in DC legally.  All you need is to be 21+ with a valid state
> ID (no MMC Required).  By purchasing an Item in-store or online
> from our I71 gifting Weed Shop you'll receive a free cannabis gift
> of your choice.

217.    There is no such thing as legal gifting of cannabis by commercial entities under Initiative

71 or Initiative 81 (relates to magic mushrooms).  What NKA Capitol Hill Dispensary does

constitutes a transfer for remuneration, this is illegal under DC law.  The DC Government has

repeatedly stated that  "gifting" of cannabis by commercial retailers is a "sale" and it is illegal for

unlicensed cannabis retailers to engage in such activity.  Further these claims represent false

advertising and false promotions, misrepresent the law and attempt to gain a competitive

advantage over the legal market by attempting to pass off their cannabis products as legal. What

NKA Capitol Hill Dispensary claims on its website is not true:

> **100% Legal Purchases:** enjoy complete peace of mind.  Our shop
> ensures all your purchases are legal, letting you relax and enjoy
> your products worry-free.

218.    The NKA Capitol Hill Dispensary promotes and advertises in interstate commerce through its use of social media (Instagram(@nka.dc), Facebook (No Kids Allowed)), various paid guides to illegal dispensaries (Toker's Guide, AllBud.com, Gentlemantoker.com, AllBud.com, Nextdoor.com,, Medium.com, etc.), search sites (Google Search, capitolhillbid.com, TripAdvisor) and its own website (www.nokidsallowed.club).  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

219.    On its website, the NKA Capitol Hill Dispensary presents an extensive menu of illegal cannabis products including Flower (18 items $15-$95), Pre-rolls (10 items $20-$30), Vape Pens (21 items $45-$125), Tinctures (3 items $95), CBD (95 items $21.50-$50), Edibles (45 items including infused drinks, candies, gummies, hash heads, etc. $10-$75), and Concentrates (6 items $75-$95). None of these products are sourced from licensed cultivators and manufacturers in the District of Columbia and are illegal under DC law.

220.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like NKA Capitol Hill Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

221.    On January 31, 2024, Plaintiff's representatives visited the NKA Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

222.    On August 21, 2024, Plaintiff investigated the NKA Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

223.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by NKA Capitol Hill Dispensary.  The 637

Pennsylvania Property Owner materially contributed to NKA Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 637 Pennsylvania Property Owner in leasing its commercial space to the NKA Capitol Hill Dispensary, the illegal cannabis sales by NKA Capitol Hill Dispensary would not have been made.

224.    The 637 Pennsylvania Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $237,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

225.    The NKA Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $2,370,000 (based on the business assumption that lease costs are approximately 10% of sales). This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses, results in estimated profits of $592,500 (equaling 25% of estimated sales).

## Q.  611 PENNSYLVANIA PROPERTY OWNER – EUPHORIA CAPITOL HILL DISPENSARY

226.    Defendant L&S Real Estate LLC ("611 Pennsylvania Property Owner") leased 900 sf of commercial space at 611 ½ Pennsylvania Avenue SE, Washington, DC 20003 to Defendant Euphoria Healing & Wellness LLC t/a Euphoria Canna ("Euphoria Capitol Hill Dispensary") who operated an illegal dispensary at that location. According to Costar, the rent for this commercial space was $45/sf  which is what ALCE uses in the calculations of the property owner's profits.

227.    The 611 Pennsylvania Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis. The 611 Pennsylvania Property Owner leased to the Euphoria Capitol Hill Dispensary on or about May 12, 2020 which is the date the Certificate of Occupancy (CO2001081) was issued for the

space leased to the Euphoria Capitol Hill Dispensary. The 611 Pennsylvania Property Owner tried to

conceal from the DC Zoning Office that an illegal dispensary was operating at 611 ½ Pennsylvania Avenue

SE by stating in its CO application that the space would be used as a General Office even though the entry

door from the street proclaimed it was a cannabis dispensary with an illuminated Green Cross sign.  The

property owner and the dispensary were motivated to use this commercial space to generate illegal cannabis

profits.

228.    The  Euphoria Capitol Hill Dispensary never had a cannabis retailer license issued by

ABCA.  At all times it operated as an illegal dispensary selling illegal cannabis that it purchased

in interstate commerce from unknown illegal sources in other states or foreign countries. None of

the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia; consequently all cannabis sold from this location

were illegal.  Additionally, the Euphoria Capitol Hill Dispensary relies on the use in interstate

commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

229.    The 611 Pennsylvania Property Owner never investigated or conducted any meaningful

due diligence review of the Euphoria Capitol Hill Dispensary before entering into a lease

because it knew that this dispensary was involved in the sale of illegal cannabis and expected it

to generate significant illegal profits. The dispensary was not hiding from the property owner the

nature of its business.  The primary purpose of the dispensary is to sell cannabis illegally and the

611 Pennsylvania Property Owner understood this and never took any other action to determine

if the dispensary had any legitimate (legal) business purpose.

230.    The Euphoria Capitol Hill Dispensary promoted itself and advertised in interstate

commerce through its use of social media (Instagram (@euphoriahealingdc), Facebook

(Euphoria Healing & Wellness), paid guides to illegal dispensaries (Leafy, Yelp,

Gentelmantoker.com) and the internet (Google Search) and its own website (www.euphoriadc.org).  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

231.    On Toker's Guide, there are numerous reviews on the high quality THC flower sold at Euphoria Capitol Hill Dispensary (Cherry Pie, Cherry Voltage, Marion Barry, Northern Lights, Platinum Cookies, Gary Payton, Purple Starburst, Huckelberry and Wedding Nerdy). On Leafy, the Euphoria Capitol Hill Dispensary explains that its cannabis offering include both THC and CBD offerings:

> We pride ourselves at the best option for cannabis and CBD services in the entire DMV.  We offer an ever expanding high quality menu of the best cannabis strains and healing All-natural CBD products available on the East Coast.  Our exclusive Super strains are unmatched in strength, quality, aesthetics and medicinal properties.  We offer an ever changing menu and products you can grow to depend on. We are discrete, safe and convenient.

232.    On its website the Euphoria Capitol Hill Dispensary states that it offers CBD vape oil and all the CBD products a customer is looking for. Its overall message across the internet is that it is a legal dispensary and its products are legal.  None of which is true. The fact that an unlicensed, illegal cannabis dispensary is able to sell illegal cannabis and cannabis products from unknown and illegal sources is another demonstration of the extent of its false advertising and promotion.

233.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Euphoria Capitol Hill Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

234.    On January 31, 2024, Plaintiff investigated the Euphoria Capitol Hill Dispensary and observed the display and sale of illegal cannabis.   ABCA investigations lead to the closing of this dispensary in August, 2024.

235.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Euphoria Capitol Hill Dispensary.  The 611 Pennsylvania Property Owner materially contributed to the Euphoria Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 611 Pennsylvania Property Owner in leasing its commercial space to the Euphoria Capitol Hill Dispensary, the illegal cannabis sales by Euphoria Capitol Hill Dispensary would not have been made.

236.    The 611 Pennsylvania Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/8 months is $108,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/8 months).

237.    The Euphoria Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/8 months are conservatively estimated at $1,080,000 (based on the reasonable business assumption that lease costs are approximately 10% of sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $270,000 (equaling 25% of estimated sales).

**R.  1829 M PROPERTY OWNER – PUFF DUPONT CIRCLE DISPENSARY**

238.    Defendant Zhu Li Wu and Defendant Jia Qi Ren ("1829 M Property Owner") lease 500 sf of their commercial space to Dreams Wellness LLC t/a Puff Dreams ("Puff DuPont Circle Dispensary") who operates an unlicensed and illegal cannabis dispensary at that location.

According to Costar the estimated rent for this location is $34-$42/sf; ALCE used $42/sf in its calculation of the property owner's profits as the most likely rate under the factual circumstances of this lease.

239.    The 1829 M Property Owner intentionally leased its commercial space for the sale of illegal cannabis, and it has a history of leasing to illegal cannabis dispensaries .  A Certificate of Occupancy for "retail use" was issued on July 15, 2021 for the space lease to Puff DuPont Circle Dispensary and the dispensary obtained a general business license (400322800888) on November 1, 2021.  Both the property owner and the illegal dispensary concealed from the DC Zoning Office their intent to allow illegal sales of cannabis. Before leasing to Puff DuPont Circle Dispensary, the 1829 M Property Owner leased to Upscale Smoke Shop LLC which operated another illegal cannabis dispensary in the same building on a different floor.

240.    The Puff DuPont Circle Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis that it purchased in interstate commerce from unknown, illegal sources in other states or foreign countries. None of the cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis that sold from this location was illegal under the laws of the District of Columbia. Additionally, the Puff DuPont Circle Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

241.    The 1829 M Property Owner never investigated or conducted any meaningful due diligence review of the Puff DuPont Circle Dispensary before entering into a lease because it knew that this dispensary was not licensed and would be involved in the sale of illegal cannabis.

The 1829 M Property Owner never took any other action to determine if the Puffs DuPont Circle Dispensary had any legitimate (legal) business purpose.

242.    The Puffs DuPont Circle Dispensary advertises in interstate commerce through its extensive use of social media (Reddit, Tik Tok (Dream Wellness DC), Instagram(@dreamwellness), Facebook (Dreams Wellness)), multiple paid internet guides to illegal cannabis shops (Leafy, Yelp, Wheresmagicmushrooms.com, Mrweednearme.com, Cannapages.com, Heresweed.com), the numerous internet postings and ads (Google, MapQuest, Parkbench.com, Trueen.com, Timeout.com) and its own website (www.dreamwellnessdc.com) . On its website and through the numerous internet postings the Puffs DuPont Circle Dispensary misrepresented its legal status and the nature, characteristics, quality, origin, and legality of the cannabis it sells in order to confuse or deceive consumers.

243.    On its website it lists many cannabis and magic mushroom products—all illegal— flowers, pre-rolls, vapes, mushrooms, edibles, and concentrates.  All are shown with detailed descriptions, photos and posted prices.

> Dream Wellness is the top choice in the DMV when it comes to weed dispensaries.  We are dedicated to offering only the best marijuana products sourced from trusted growers to ensure high quality.  At Dream Wellness, you can find a wide range of products, including premium cannabis flower, edibles, gummies, CBD, pre-rolls, topicals, concentrates and vape accessories.

244.    The Puff DuPont Circle Dispensary also states on its website that it makes deliveries of the illegal cannabis products throughout DC, Maryland, and Virginia in interstate commerce although legal dispensaries in DC are prohibited from deliveries outside of DC.  The dispensary misrepresents its legal status by falsely claiming to be "Initiative 71 complaint" and falsely advertises and promotes itself in interstate commerce as a legal cannabis dispensary.

> Dream Wellness is a premium Cannabis, Weed and CBD Gift Store

70

> that is Initiative 71 complaint located in Washington DC.  We have
> products that are dedicated to bringing you elevated calmness,
> relaxation and relief for dealings with anxiety, depression,
> post-traumatic stress disorder and much more.  Visit us in store
> to experience what we have to offer at Dreams Wellness.

245.    In the blogs on its website, Puff DuPont Circle Dispensary explains how it "gets around

the Law" prohibiting the sale of cannabis by unlicensed entities by claiming to "gift" it in

conjunction with a pretend sale of some other item of nominal value.

> What's Cannabis Gifting in DC?  Cannabis Gifting in DC is when
> someone 21 or older gives cannabis as a "gift".  This started with
> Initiative 71.  Since selling cannabis is still illegal, dispensaries
> often give cannabis as a gift with other purchases, like merchandise
> to get around the law.

246.    DC's 2014 Initiative-71 was a voter-approved ballot initiative in the District of Columbia

that legalized recreational use of cannabis and made it legal for a person  21 and older to possess

up to 2 ounces and allowed personal cultivation of up to six plants per house or dwelling unit.  It

did not authorize the sale or transfer for remuneration of cannabis, nor did it allow for the

commercial cultivation of or manufacture of cannabis products.  The DC Government has

repeatedly emphasized that commercial "gifting" is the transfer for remuneration and is illegal.

Furthermore, it is not just the retail transaction that is illegal, but the cannabis being sold in this

situation is also illegal.

247.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed

dispensaries (like Puff DuPont Circle Dispensary) as premium, legal products to gain an unfair

competitive advantage over licensed dispensaries.

248.    On January 25, 2024, Plaintiff investigated the Puff DuPont Circle Dispensary and

observed the display and sale of illegal cannabis.

249.    On August 21, 2024, Plaintiff again investigated the Puff DuPont Circle Dispensary and observed the display and sale of illegal cannabis.

250.    On November 1, 2024, Plaintiff again investigated the Puff DuPont Circle Dispensary and  observed the display and sale of illegal cannabis.

251.  The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Puff DuPont Circle Dispensary.  The 1829 M Property Owner materially contributed to the Puff DuPont Circle Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1829 M Property Owner in leasing its commercial space to the Puff DuPont Circle Dispensary, the illegal cannabis sales by Puff DuPont Circle Dispensary would not have been made.

252.    The 1829 M Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $63,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

253.    The Puff DuPont Circle Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are very conservatively estimated at $630,000 (based on the reasonable business assumption that lease costs are approximately 10% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $157,500 (equaling 25% of estimated sales).

### S.  1221 PENNSYLVANIA PROPERTY OWNER – BUD CAPITOL HILL DISPENSARY

254.    Defendant Steve Farzad Ardekani ("1221 Pennsylvania Property Owner") leased 800 sf of commercial space to Defendant Bud Love LLC ("Bud Capitol Hill Dispensary") who operates

an illegal dispensary at that location.  According to Costar, the rent for this commercia space is $52.20/sf which is what ALCE used to calculate the property owner's profits.

255.    The 1221 Pennsylvania Property Owner intentionally leased its commercial space for the sale of illegal cannabis.  The 1221 Pennsylvania Property Owner  appears to have leased to the Bud Capitol Hill Dispensary no later than February 1, 2023.  Both the property owner and dispensary sought to conceal from the DC Zoning Office the intended use of the property to operate as an unlicensed, illegal cannabis dispensary by stating in the CO application that the space would be used for Retail Clothing.  The property owner and dispensary were collectively motivated to use this commercial space to generate illegal cannabis revenues.

256.    The Bud Capitol Hill Dispensary never had a cannabis retailer license issued by ABCA. At all times it has operated as an illegal dispensary selling illegal cannabis that it purchased in interstate commerce from unknown illegal sources in other states or foreign countries.  None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location were illegal. Additionally, the Bud Capitol Hill Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

257.    The 1221 Pennsylvania Property Owner never investigated or conducted any meaningful due diligence review of the Bud Capitol Hill Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell cannabis illegally and the 1221 Pennsylvania Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.

258.    The Bud Capitol Hill Dispensary falsely promotes and advertises in interstate commerce through its use of social media (Instagram(@bud.lovedc), paid internet guides to illegal dispensaries (Yelp, Leafy, Roadtrippers, Trustpilot), the internet (Google Search, MapQuest,Edibleswashington.com, Capitolhillbid.org, etc.) and its own website (www.budlovedc.com) that is encourages customers to use to place advance orders to be picked-up or delivered.  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

259.    On its website the Bud Capitol Hill Dispensary offers a wide selection of cannabis products that it presents as completely legal in the District of Columbia:

> Bud Love is more than just a place to purchase flowers in Washington, DC. It is the ultimate destination for those seeking the highest quality and most diverse selection of cannabis products . . .Bud Love offers an extensive selection of premium flowers, concentrates, edibles, topicals and accessories.

260.    The wide selection  includes magic mushrooms, HHC Manrocks, CBD products, THC, flower (at least 11 items $15-$75), Pre-rolls, Hybrid, Indica and Sativa strains, Delta 8, Delta 9, and Edibles. Additionally, Bud Capitol Hill Dispensary offers delivery of all its illegal products in interstate commerce.

261.    The Bud Capitol Hill Dispensary throughout its website and on its various internet postings, it represents itself as a legal cannabis dispensary. On Leafy it posts a fake ABCA License No 128413, an on its website it claims that it functions as an I-71 complaint "gifting" shop that allows it to gift cannabis along with the sale of a trading card, and it makes a similar false claim as to being I-81 complaint that allows it to "gift" magic mushrooms.

> At Bud Love, we do not sell marijuana.  Instead we provide marijuana as a gift to consumers who are 21 years or older and have a valid state

> ID, in accordance with Initiative 71.
>
> ***
>
> Bud Love is an Initiative 71 compliant shop which means that we do
> not sell cannabis, but we offer free gifts of cannabis with trading cards
> and purchases.
>
> ***
>
> At Bud Love, an Initiative 81 complaint shop, we offer free gifts of
> entheogenic plants and fungi with trading card purchases.

262.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed

dispensaries (like Bud Capitol Hill Dispensary) as premium, legal products to gain an unfair

competitive advantage over licensed dispensaries.

263.    On March 5, 2024, Plaintiff investigated the Bud Capitol Hill Dispensary and observed

the display and sale of illegal cannabis.

264.    On June 7, 2024, ABCA issued a warning letter to the Bud Capitol Hill Dispensary

stating that ABCA's investigator on June 7,2024, had "observed unlicensed and illegal cannabis

operations in violation of Chapter 16B of title 7 of the D.C. Official Code and D.C. Official Code

§48-904.01", including "Illegally selling cannabis or knowingly engaging or attempting to

engage in the purchase, sale, exchange, or delivery cannabis (D.C. Official Code §§7-1671.08(f),

48-904.01(a)(1)(B))"…and "Illegally displaying advertising or signs related to the price of

cannabis; displaying cannabis advertisements on the exterior of a window or interior of any door;

or making cannabis; or making cannabis advertisements visible to persons on public or private

space outside the premises (D.C. Official Code §7-1671.06b( e)."

265.    ABCA's June 7, 2024 letter concluded by stating:

> Please note that the issuance of this warning letter does not protect
> you from prosecution by other federal or District law enforcement
> agencies or from any lawsuits that may be filed by private actors
> against you.  Therefore, you are putting yourself at risk if you
> continue to engage in this illegal conduct or continue to allow it
> to occur.

266.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Bud Capitol Hill Dispensary.  The 1221 Pennsylvania Property Owner materially contributed to the Bud Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1221 Pennsylvania Property Owner in leasing its commercial space to the Bud Capitol Hill Dispensary, the illegal cannabis sales by Bud Capitol Hill Dispensary would not have been made.

267.    The 1221 Pennsylvania Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 1.5 years is $63,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 1.5 years).

268.    The Bud Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 1.5 years are estimated at $630,000 (based on the reasonable business assumption that lease costs are approximately 10% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $157,500 (equaling 25% of estimated sales).

### T.  1223 PENNSYLVANIA PROPERTY OWNER – FRIENDS CAPITOL HILL DISPENSARY

269.    Defendant Faraz Ardekani ("1223 Pennsylvania Property Owner") leased 1400 sf of commercial space to Defendant Legacy Investment USA LLC t/a Friends Smoke Shop ("Friends Capitol Hill Dispensary") who operates an illegal dispensary at that location where it also sells illegal flavored tobacco products. According to Costar the starting rent for the renewal of the lease for this commercial space was $47.14/sf; ALCE uses this rate to calculate the property owner's profits.

270.    The 1223 Pennsylvania Property Owner intentionally leased its commercial space for the sale of illegal cannabis.  It is no coincidence that the 1223 Pennsylvania Property Owner is a close family relative of the 1221 Pennsylvania Property Owner, that they own adjacent commercial properties in DC, and they both lease to unlicensed and illegal cannabis stores.  The 1223 Pennsylvania Property Owner first leased to the Friends Capitol Hill Dispensary on or about June 29, 2018, which is the date a Certificate of Occupancy (CO2200964) was issued for the space leased to Friends Capitol Hill Dispensary.

271.    When Defendant Legacy Investment USA LLC was initially formed it operated under the trade name "Smokey Shope" which it still uses but it also registered "Friends" as its new trade name on February 19, 2021. It is the same legal entity regardless of which trade name it uses, and it has operated as an unlicensed and illegal cannabis dispensary at this same location for the past 6 years. References to "Friends Capitol Hill Dispensary" is meant as a reference to the Defendant no matter which trade name it was operating under.  Both the property owner and dispensary worked together and were jointly motivated to use this commercial space to generate illegal cannabis profits.

272.    The  Friends Capitol Hill Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an unlicensed, illegal dispensary selling illegal cannabis that it purchased in interstate commerce from unknown illegal sources from other states or foreign countries. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis that sold from this location was illegal.  Additionally, the Friends Capitol Hill Dispensary relies on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

273.    The 1223 Pennsylvania Property Owner never investigated or conducted any meaningful due diligence review of the Friends Capitol Hill Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate significant profits. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell cannabis illegally and the 1223 Pennsylvania Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.

274.    The Friends Capitol Hill Dispensary falsely promotes and advertises in interstate commerce itself as a legally licensed cannabis dispensary that sells cannabis products that are lawful under the laws of the District of Columbia. It places ads on Yelp, Headshops.puffingbird.com, Loc8nearme, Nocilocal.com, Cannapages.com and MapQuest.  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

275.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Friends Capitol Hill Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries. The Friends Capitol Hill Dispensary adds significantly to the deception of consumers by also selling in the same shop a selection of flavored tobacco products, including nicotine vapes, that are also illegal in the District of Columbia.

276.    On March 5, 2024, Plaintiff investigated the Friends Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

277.    On August 21, 2024, Plaintiff investigated the Friends Capitol Hill Dispensary and observed the display and sale of illegal cannabis.

278.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Friends Capitol Hill Dispensary.  The 1223 Pennsylvania Property Owner materially contributed to the Friends Capitol Hill Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1223 Pennsylvania Property Owner in leasing its commercial space to the Friends Capitol Hill Dispensary, the illegal cannabis sales by Friends Capitol Hill Dispensary would not have been made.

279.    The 1223 Pennsylvania Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 3 years $197,988 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

280.    The Friends Capitol Hill Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are estimated at $1,320,579 (based on the reasonable business assumption that lease costs are no higher than 15% of sales).  This level of sales, minus its cost of goods (using a reasonable business assumption of 40%), rent and other expenses results in estimated profits of $330,144 (equaling 25% of estimated sales).

### U.  DEFENDANT HAZRAT SAFI

281.    Defendant Hazrat Safi ("Safi") is the only listed owner of Defendant Legacy Investments USA LLC t/a Friends Capitol Hill Dispensary which on information and belief is a single member LLC.

282.     The Friends Capitol Hill Dispensary is the business conduit for Defendant Safi who directs and controls its unlicensed and illegal cannabis operations in the District of Columbia and its interstate sales and deliveries of illegal cannabis and cannabis products.

283.     There is a commingling of business records between Defendant Safi and the Friends Capitol Hill Dispensary and no corporate veil should exist to insulate Defendant Safi from the liability of the Friends Capitol Hill Dispensary.

**COUNT I – LIABILITY FOR VIOLATION OF LANHAM ACT FOR UNFAIR COMPETITION**

284.     Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 283 above.

285.     Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) provides:

(a)  Civil Action:

(1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or in any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,

 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

286.     Defendants Power of Plants LLC t/a Mr. Nice Guys ("Guys DuPont Circle Dispensary", "Guys Logan Circle Dispensary", "Guys Capitol Hill Dispensary", and "Guys U Street Dispensary"), American Legends LLC ("American Legends") and All American Papers LLC

("American Papers")  t/a  All American Gallery, Bakery, CBD and Papers ("AA  Adams Morgan Dispensary", "AA Truxton Circle Dispensary", "AA  U Street Dispensary", and "AA  H Street Dispensary"), Mother Blossom LLC ("Mother Capitol Hill Dispensary"), Gvn3 LLC ("Giving H Street Dispensary"), Flowerz LLC ("Flowerz Capitol Hill Dispensary"), Seedless LLC t/a N.K.A. (No Kids Allowed) ("NKA Capitol Hill Dispensary"), Euphoria Healing & Wellness LLC t/a Euphoria Canna ("Euphoria Capitol Hill Dispensary"),  Bud Love LLC ("Bud Capitol Hill Dispensary"), Legacy Investment USA LLC t/a Friends Smoke Shop ("Friends Capitol Hill Dispensary") and Dreams Wellness LLC t/a Puff Dreams ("Puff DuPont Circle Dispensary") (hereinafter collectively referred to as "Sixteen Illegal Dispensary-Defendants")[5] each engaged in unfair competition against the legally licensed cannabis entities in violation of Section 43(a)(1)(A) of the Lanham Act.

287.    Each of the Sixteen Illegal Dispensary-Defendants falsely claim or represent in interstate commerce that the "origin" of the cannabis it sells (or sold) is cultivated or manufactured in the District of Columbia by licensed cultivators and/or manufactured because those licensees are the only source of legal cannabis under the laws of the District of Columbia.  None of the cannabis sold by any of the Sixteen Illegal Dispensaries had as its "origin" any of the licensed cultivators and/or manufacturers in the District of Columbia. The false or misleading representations as to the "origin" of the cannabis sold by the Sixteen Illegal Dispensary-Defendants violate Section 43(a)(1) of the Lanham Act.

288.    Each of the Sixteen Illegal Dispensary-Defendants falsely describe or give false or misleading representations in interstate commerce as to the cannabis they sell (sold) "to cause

---

[5] Technically there are only ten Illegal Dispensary-Defendants since Power of Plants LLC owns and operates four illegal dispensaries and American Legends LLC also owns and operates four illegal dispensaries, but each of these illegal dispensaries is described and explained separately in the Complaint.

confusion, or to cause mistake, or to deceive" consumers "as to the origin, sponsorship, or approval" of the District of Columbia Government (through ABCA) in violation of Section 43(a)(1)(A) of the Lanham Act.

289.    Each of the Sixteen Illegal Dispensary-Defendants falsely describe or make false or misleading descriptions of facts or false or misleading representations of fact in interstate commerce as to their own legal status to sell cannabis in the District of Columbia "to cause confusion, or to cause mistake, or to deceive" consumers as to the unlicensed dispensary's "affiliation, connection, or association … as to the origin, sponsorship, or approval of his or her goods, services, or commercial  activities" by licensed dispensaries in violation of Section 43(a)(1)(A) of the Lanham Act.

290.    Each of the Sixteen Illegal Dispensary-Defendants operate or operated in the past three years an illegal cannabis dispensary selling illegal cannabis flower and other cannabis products while simultaneously misrepresenting to customers (both in person and on the internet) that they were legally licensed or legally authorized in the District of Columbia to sell cannabis.  These misrepresentations were made to deceive consumers to gain an unfair competitive advantage over licensed dispensaries who sold legal cannabis from licensed cultivators and manufacturers.

291.    Each of the Sixteen Illegal Dispensary-Defendants used the internet to deceive consumers in interstate commerce as to their legal status by claiming they were licensed or "i-71 compliant" or otherwise legally authorized to operate as a cannabis shop or dispensary and to sell or  "gift" cannabis to consumers in accordance with the laws of the District of Columbia.

292.    Without such misrepresentations and deceptions aimed at consumers, none of the Sixteen Illegal Dispensary-Defendants would have been able to make inroads into the cannabis market in the District of Columbia.

293.    Each of the Sixteen Illegal Dispensary-Defendants deceived consumers (both in person and on the internet) by representing that the cannabis flower and other cannabis products they sold were legal in the District of Columbia.

294.    None of the cannabis flower and other cannabis products sold by the Sixteen Illegal Dispensary-Defendants in their stores, listed on their websites, or sold online was legal under the laws of the District of Columbia.

295.    Each of the Sixteen Illegal Dispensary-Defendants sells illegal cannabis that is deceptively packaged as a premium product to deceive consumers to gain an unfair competitive advantage over legal dispensaries who are prohibited from purchasing and selling illegal cannabis.

296.    Each of the Sixteen Illegal Dispensary-Defendants deceived consumers into purchasing cannabis that is illegal under the laws of the District of Columbia.

297.    Some of the Sixteen Illegal Dispensary-Defendants also sell "magic mushrooms" (the common street name for the "psilocybin" found in entheogenic plants and fungi) and magic mushroom products like chocolates as a substitutable product for cannabis.  These dispensaries misrepresent the magic mushrooms and products they sell as being legal in DC and only available as premium products available at certain (albeit illegal) dispensaries.  These representations are false and are intended to deceive consumers to encourage their shopping with the illegal dispensary and divert sales from the legal market represented by ALCE.

298.    Some of the Illegal Dispensary-Defendants also sell illegal flavored tobacco products, including nicotine vapes (*e.g.,* Friends Capitol Hill Dispensary), and/or "magic" mushrooms as complementary "buzz" products that consumers may view as substitutable for cannabis.  By

offering an additional product mix not available from licensed cannabis dispensaries , these unlicensed and illegal dispensaries seek to gain an unfair competitive advantage.

299.    At least eleven of  the Illegal Dispensary-Defendants (Guys U Street Dispensary, AA Adams Morgan Dispensary, AA Truxton Circle Dispensary, AA U Street Dispensary, AA  H Street Dispensary, Giving H Street Dispensary, Flowerz Capitol Hill Dispensary, NKA Capitol Hill Dispensary, Euphoria Capitol Hill Dispensary, Bud Capitol Hill Dispensary, and Friends Capitol Hill Dispensary) also sell electronic smoking devices for  cannabis within ¼-mile of middle or high schools without regard to the prohibition of such sales under DC's Flavored Tobacco Prohibition Amendment Act of 2021.  These illegal dispensaries do so to deceive or confuse consumers as to the legality of the products they sell.

300.    Commercial sales of illegal cannabis flower and other cannabis products by these illegal dispensaries competed with commercial sales of the legal cannabis by legal, licensed dispensaries in the District of Columbia and diverted commercial sales from the legal cannabis market, causing commercial injury to licensed cultivators, manufacturers and dispensaries represented by ALCE.

301.    In accordance with 15 U.S.C. §1117(a), Plaintiff  seeks equitable relief equal to disgorgement of the profits of the Sixteen Illegal Dispensary-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition.

**COUNT II – CONTRIBUTORY LIABILITY FOR VIOLATION OF LANHAM ACT FOR UNFAIR COMPETITION**

302.     Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 301 above.

303.     Defendants 3101 Rhode Island Avenue LLC ("1215 Connecticut Property Owner"), Anfield 1470 Church LLC ("1470 Church Property Owner"), 8th Street Dev LLC ("409 8th Property Owner"), TDM LLC ("1922 9th Property Owner"), WY18 Retail, LLC ("2206 18th Property  Owner"), Louise D. Costa-Brown and Brian R. Brown ("1334 N. Capitol Property Owner"), Chukwujindu Victor Mbakpuo  and Ndidiamaka E. Mbakpuo ("1908 9th Property Owner"), Rahimi Investment Inc. ("504 H Property Owner"), Jemel's Niti LLC ("406 8th Property Owner"), Jemel's Arcade LLC ("1236 H Property Owner"), Lienhai Nguyen Quang Trustee under the Quang Lienhai Living Trust ("318 Massachusetts Property Owner"), 637-639 Pennsylvania Avenue SE LLC ("637 Pennsylvania Property Owner"), L&S Real Estate LLC ("611 Pennsylvania Property Owner"), Zhu Li Wu and Jia Qi Ren ("1829 M Property Owners"), Steve Farzad Ardekani ("1221 Pennsylvania Property Owner"), and Faraz Ardekani ("1223 Pennsylvania Property Owner")  (hereinafter collectively referred to as "Sixteen Property Owner-Defendants") are each individually contributorily liable for violation of Section 43(a)(1)(A) of the Lanham Act for unfair competition.

304.     Each of the Sixteen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed such illegal dispensaries to falsely claim or represent that they were legal or licensed cannabis dispensaries in a manner "likely to cause confusion, or to cause mistake, or to deceive" consumers as to the legal status in the District of Columbia of the unlicensed dispensaries in violation of Section 43(a)(1)(A) of the Lanham Act.

305.     Each of the Sixteen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed the use of the commercial space and the address of such

commercial space to be used to sell illegal cannabis which was "likely to cause confusion, or to cause mistake, or to deceive" consumers  "as to the origin, sponsorship, or approval of" this illegal cannabis, or the legality of the other related services offered by unlicensed dispensaries, including access to credit or debit cards, and shipping and delivery of illegal cannabis in interstate commerce.

306.    Each of the Sixteen Property Owner-Defendants materially participated in the establishment of operations of one or more of the Sixteen Illegal Dispensary-Defendants by leasing commercial space to them for the sale of illegal cannabis. These defendants materially participated with the illegal dispensary-defendants in violations of Section 43(a)(1)(A).

307.    Each of the Sixteen Property Owner-Defendants leased space in commercial properties they owned to unlicensed and illegal cannabis dispensaries.

308.    Each of the Sixteen Property Owner-Defendants had knowledge of or had reason to know that the Sixteen Illegal Dispensary-Defendants were unlicensed and sold illegal cannabis flower and other cannabis products, and in several instances, illegal flavored tobacco products and/or "magic" mushrooms, at their respective leased locations to gain an unfair competitive advantage.

309.    Eleven of the commercial properties leased to the Sixteen Illegal Dispensary-Defendants by the Sixteen Property Owner-Defendants are located within ¼-mile of a middle or high school in DC where the sale of all electronic smoking devices are prohibited under DC law.  Those Property Owner-Defendants had knowledge of or had reason to know that the Illegal Dispensary-Defendants that they leased to sold prohibited vapes and other illegal cannabis and nicotine products to deceive or confuse consumers.

310.    Each of the Sixteen Property Owner-Defendants was aware (or should have been aware) that consumers were deceived as to the legal status of the illegal dispensary-defendants, and the

legality of the cannabis and, in certain cases, flavored tobacco and/or "magic" mushrooms, sold at these illegal dispensaries.

311.    Each of the Sixteen Property Owner-Defendants materially contributed to the deception and/or confusion of consumers by providing one or more illegal dispensaries with the appearance of legitimacy by leasing commercial property to the illegal dispensary.

312.    None of the Sixteen Property Owner-Defendants required any of the illegal dispensaries to become a legal, licensed dispensary, and only sell cannabis that was legal under the laws of the District of Columbia.

313.    "Willful blindness" of any of the Sixteen Property Owner-Defendants does not excuse their liability for violation of the Lanham Act for contributory unfair competition.

314.    The actions of each of these Sixteen Property Owner-Defendants caused injury to the legal cannabis market represented by ALCE  in the form of commercial cannabis sales diverted from the legal market to the illegal market.  Without the participation of the Sixteen Property Owner-Defendants, the illegal dispensaries would not have been able to operate and sell illegal cannabis flower and other cannabis products.

315.    Each of the Sixteen Property Owner-Defendants acted as competitors to the legal cannabis market by their actions in leasing commercial space to illegal dispensaries to compete with the legal market for cannabis sales.

316.    The lease payments received by each of the Sixteen Property Owner-Defendants was paid with revenues generated by the sale of illegal cannabis diverted from the legal cannabis market.

317.    Where lease payments to a Property Owner-Defendant included a percentage of revenues from illegal cannabis sales, this additional direct participation indicates an even closer

involvement of the property owner as a partner in the illegal sale and distribution of illegal cannabis.

318.    In accordance with 15 U.S.C. §1117(a), Plaintiff seeks equitable relief with the disgorgement of the profits of the Sixteen Property Owner-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition.

**COUNT III – LIABILITY FOR VIOLATION OF LANHAM ACT FOR FALSE ADVERTISING AND FALSE PROMOTION**

319.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 318 above.

320.    Each of the Sixteen Illegal Dispensary-Defendants engaged in false advertising and promotion in violation of Section 43(a)(1)(B) of the Lanham Act.

321.    Each of the Sixteen Illegal Dispensary-Defendants falsely describe or give false or misleading descriptions of fact or misleading representations of fact in interstate commerce as to the cannabis they sell. Each make such misrepresentations on the internet regarding the nature, characteristics, qualities, or geographic origin of the cannabis they sell in violation of Section 43(a)(1)(B) of the Lanham Act.

322.    Each of the Sixteen Illegal Dispensary-Defendants falsely describes or gives false or misleading descriptions of fact or misleading representations of fact as to the cannabis sold by legal, licensed dispensaries in violation of Section 43(a)(1)(B) of the Lanham Act.

323.    Each of the Sixteen Illegal Dispensary-Defendants used the internet to falsely advertise and promote themselves in interstate commerce as legal dispensaries in the District of Columbia

that sold only legal cannabis flower and other cannabis products. These claims along with misleading packaging of illegal cannabis was intended to confuse and deceive consumers.

324.    Each of the Sixteen Illegal Dispensary-Defendants used the internet to falsely advertise and promote illegal cannabis and illegal dispensaries in interstate commerce.

325.    Each of the Sixteen Illegal Dispensary-Defendants advertises and promotes in interstate commerce the sale of some type of illegal cannabis, e.g., CBD, THC, hemp-derived, Delta 8, etc.

326.    Advertising claims by the Sixteen Illegal Dispensary-Defendants that any of these cannabis types are legally sold by an unlicensed retailer in DC are intended to confuse or deceive consumers.

327.    Each of the Sixteen Illegal Dispensary-Defendants sells some nationally marketed cannabis brands as a premium product concealing the fact that all such cannabis products produced outside of the District of Columbia, purchased, and transported in interstate commerce by the illegal dispensary-defendants, and are illegal in DC;

328.    Many of the nationally marketed cannabis brands are deceptively packaged with inaccurate potency statements, misrepresent the safety of the products, fail state the lack of third-party testing or governmental oversight or fail to give any information as to the actual cultivator or manufacturer.  The Sixteen Illegal Dispensary-Defendants withhold this information to deceive or confuse consumers about the cannabis they are selling illegally.

329.    Some of the Sixteen Illegal Dispensary-Defendants also sell cannabis deceptively packaged to look like non-cannabis, national consumer brands to confuse or deceive consumers and gain a competitive advantage over the legal market, e.g., Nerd Robes, Chips Ahoy, Milky Way, Snickers, Dean & Deluca, Doritos, etc.

330.    Many of the Sixteen Illegal Dispensary-Defendants offer to deliver illegal cannabis products in interstate commerce outside of the District of Columbia into Maryland and Virginia and falsely represent such delivery options as being safe and legal.  Legal dispensaries in the District of Columbia are prohibited from making deliveries in interstate commerce outside of the District of Columbia.

331.    Some of the Sixteen Illegal Dispensary-Defendants falsely advertise and promote the sale in interstate commerce on their websites and in their stores of "magic" mushrooms that they also represent as being legal in DC for them to sell. Legal, licensed cannabis dispensaries in the District of Columbia are prohibited from selling 'magic" mushrooms which are illegal for everyone to sell in the District of Columbia.

332.    Some of the Illegal Dispensary-Defendants also sell illegal flavored tobacco products that are national brands, including nicotine vapes, that are heavily advertised in interstate commerce. The inclusion of these brands in the product mix of an illegal dispensary help to promote the illegal dispensary/smoke shops in a manner intended to confuse or deceive consumers.

333.    Eleven of the Illegal Dispensary-Defendants also sell electronic smoking devices within ¼-mile of middle or high schools and seek to increase their sales by offering heavily advertised brands even though illegal in DC.

334.    Each of the Sixteen Illegal Dispensary-Defendants have (or had) an internet presence that they used in interstate commerce to confuse or deceive consumers about the illegal cannabis they advertised for sale.

335.    Each of the Sixteen Illegal Dispensary-Defendants has or had websites promoting in interstate commerce the sale at their leased locations and online of illegal cannabis products that

they falsely represented to be legal in the District of Columbia, laboratory tested and high quality.

336. Each of the Sixteen Illegal Dispensary-Defendants falsely advertised and falsely promoted in interstate commerce claims intended to deceive consumers as to the legal status of the different cannabis products and the legal status of the unlicensed dispensary itself.

337. Each of the Sixteen Illegal Dispensary-Defendants concealed from consumers the fact that they were not licensed by ABCA and used the internet to advertise in interstate commerce and promote itself as operating as a legal dispensary.

338. None of the cannabis sold by any of the Sixteen Illegal Dispensary- Defendants can be legally sold by any retailer in DC, even licensed dispensaries are prohibited from selling such products that are not cultivated and manufactured by licensed cultivators and manufacturers in DC in accordance with ABCA regulations.

339. False claims as to the legality and nature of the illegal cannabis flower and other cannabis products falsely advertised and falsely promoted and sold in interstate commerce by the Sixteen Illegal Dispensary-Defendants reduced commercial sales in the legal cannabis market in the District of Columbia and caused damage to the licensed cultivator, manufacturers and dispensaries represented by ALCE.

340. In accordance with 15 U.S.C. §1117(a), Plaintiff seeks equitable relief equal to disgorgement of the profits of the Sixteen Illegal Dispensary-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary complete cessation of illegal cannabis sales) for violation of the Lanham Act for false advertising and false promotion.

**COUNT IV – CONTRIBUTORY LIABILITY FOR VIOLATION OF LANHAM ACT FOR FALSE ADVERTISING AND FALSE PROMOTION**

341.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 340 above.

342.    Each of the Sixteen Property Owner-Defendants is liable for violation of Section 43(a)(1)(B) of the Lanham Act for contributory false advertising and promotion.

343.    Each of the Sixteen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed such illegal dispensaries to advertise and promote in interstate commerce their presence and the sale of illegal cannabis at that location which allowed the misrepresentation of the nature, characteristics, qualities, or geographic origin of the cannabis sold by the illegal dispensaries in violation of Section 43(a)(1)(B) of the Lanham Act.

344.    Each of the Sixteen Property Owner-Defendants also permitted their property to be used to advertise or promote in interstate commerce the sale of illegal cannabis in DC with signage of illegal cannabis sales attached to the building property and photos of the building and signage posted on the internet, along with direction to the property in violation of Section 43(a)(1)(B) of the Lanham Act.

345.    Each of the Sixteen Property Owner-Defendants had knowledge of or had reason to know that the Sixteen Illegal Dispensary-Defendants was advertising and promoting in interstate commerce the sale of illegal cannabis flower and other cannabis products sold from their leased premises.  These defendants materially participated in the illegal dispensary-defendants' violations of Section 43(a)(1)(B) of the Lanham Act.

346.    "Willful blindness" of these sixteen defendants does not excuse their liability for violation of the Lanham Act for contributory false advertising and false promotion.

347.    Each of the Sixteen Property Owner-Defendants signed (or was responsible for signing) leases with the Sixteen Illegal Dispensary-Defendants.  They entered into these leases with knowledge that the lease payments made to them would be based on the sale of illegal cannabis falsely advertised and promoted in interstate commerce by the sixteen illegal dispensary-defendants.

348.    Each of the Sixteen Property Owner-Defendants caused injury to the legal market by intentionally leasing to illegal dispensaries that they knew or should have known were selling illegal cannabis and diverting commercial sales from the legal cannabis market and causing damage to the licensed cultivators, manufacturers and dispensaries represented by ALCE.

349.    Each of the Sixteen Property Owner-Defendants had access to the leased premises that displayed illegal cannabis flower and other cannabis products that were being falsely advertised and promoted in interstate commerce with the support of these defendants. Without the knowing involvement and participation of these sixteen defendants, the illegal dispensaries would not have been able to operate by falsely advertising and promoting in interstate commerce the sale of illegal cannabis.

350.    None of the Sixteen Property Owner-Defendants as a condition of the lease or otherwise required the illegal dispensary to obtain a legal cannabis license or to refrain from ever selling illegal cannabis.

351.    None of the Sixteen Property Owner-Defendants ever took any action to cause the illegal dispensary to cease advertising and promoting the sale from their leased premises of illegal cannabis.

352.    In accordance with 15 U.S.C. §1117, Plaintiff seeks equitable relief equal to disgorgement of the Sixteen Property Owner-Defendants' profits for the harm they caused ALCE

members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date of the complete cessation of all illegal cannabis sales from the leased premises) for the violation of the Lanham Act for contributory false advertising and promotion.

## COUNT V – VIOLATION OF COMMON LAW IN THE DISTRICT OF COLUMBIA FOR UNFAIR COMPETITION

353.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 352 above.

354.    Common law of Unfair Competition in the District of Columbia recognizes a party's liability to a competitor where the offending party used methods that were independently illegal or where the offending party used false advertising or deceptive packaging.

355.    Each of the Sixteen Illegal Dispensary-Defendants engaged in unfair competition by: (i) selling of cannabis in the District of Columbia without being licensed as a cannabis retailer by ABCA; (ii) selling illegal cannabis flower and other cannabis products not cultivated or manufactured by licensed cultivators and manufacturers in DC; (iii) falsely advertising the cannabis they sold as legal, safe, and from legal sources; and (iv) selling cannabis in deceptive packaging as a premium product that licensed dispensaries cannot sell under the laws of the District of Columbia.  Additionally, some of the Sixteen Illegal Dispensary-Defendants sold other illegal "buzz" products partially substitutable for cannabis, such as "magic" mushrooms and flavored tobacco products to confuse or deceive consumers to gain an unfair competitive advantage over licensed dispensaries.

356.    Each of the Sixteen Property Owner-Defendants materially participated in the establishment and operation of an illegal cannabis dispensary by leasing commercial space to the

illegal dispensaries knowing (or have reason to know) of their intent to sell illegal cannabis flower, and other cannabis products.  Where a Property Owner-Defendant received a percentage of the illegal dispensaries' revenues from the sale of illegal cannabis, that Property Owner-Defendant itself functioned as an illegal dispensary.

357.    The legal cannabis market was injured as a direct result of the unfair competition of the illegal dispensaries and the contributory unfair competition of the property owner-defendants. The legal cannabis market was injured by the commercial sales diverted from the sale of legal cannabis in the District of Columbia.

358.    Plaintiff  seeks equitable relief equal to disgorgement of the profits of the Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the common law in the District of Columbia for unfair competition and false advertising.

**COUNT VI – LIABILITY FOR NEGLIGENCE IN OPERATING ILLEGAL CANNABIS DISPENSARIES SELLING ILLEGAL CANNABIS**

359.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 358 above.

360.    Each of the Sixteen Illegal Dispensary-Defendants owed a duty of care to the legal cannabis market (composed of the licensed cultivators, manufacturers, and retailers) in the District of Columbia to apply for and obtain a legal license from ABCA before selling any cannabis in the District of Columbia.

361.    Foreseeability of  injury to the legal cannabis market is apparent where a party engages in the illegal sale of cannabis without obtaining a legal license and ignoring the laws in the District

of Columbia regarding what cannabis is consider legal for sale in DC and what entities are

legally authorized to sell such legal cannabis. If a dispensary is not licensed to sell cannabis

flower and other cannabis products to consumers in the District of Columbia then it is not

authorized to purchase legally cultivated cannabis flower and other legally manufactured

cannabis products.  By selling illegal cannabis flower and other cannabis products it was

foreseeable that the legal cannabis market would be injured by the diversion of commercial sales

and profits to the illegal cannabis market.

362.    Each of the Sixteen Illegal Dispensary-Defendants breached its duty of care to the legal

cannabis market in failing to become licensed and in selling illegal cannabis flower and other

cannabis products to consumers in the District of Columbia.

363.    The breach of their respective individual duties of care by these defendants is the

proximate cause for the legal cannabis market's injury.  These defendants knew or should have

known that their actions would cause injury to the legal cannabis market as represented by

ALCE.

364.    The legal cannabis market was injured by each of the Sixteen Illegal Dispensary-

Defendants' breach of their individual duty of care by the diversion of commercial sales from the

legal cannabis market to the illegal cannabis market.  ACLE seeks equitable relief through the

disgorgement of the profits of the Sixteen Illegal Dispensary-Defendants for the harm caused

ALCE members and the legal cannabis market from the earlier of (1) three years prior to the

filing of this complaint or (2) the date the illegal dispensary began operations through the date of

judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for their

negligence in the breach of their duty to the legal cannabis market represented by ALCE.

**COUNT VII – LIABILITY FOR NEGLIGENCE IN BREACH OF DUTY OF DUE DILIGENCE IN ALLOWING ILLEGAL CANNABIS DISPENSARIES TO OPERATE**

365.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 364 above.

366.    Each of the Sixteen Property Owner-Defendants owed a duty of care to the legal cannabis market in the District of Columbia to exercise due diligence in the leasing of commercial property so as not to lease to unlicensed and illegal cannabis dispensaries.

367.    The foreseeability of injury to the legal cannabis market is apparent where commercial property is leased to unlicensed cannabis dispensaries that have no access to legal cannabis supplies.

368.    The duty of care owed by these defendants to the legal cannabis market required them to engage in due diligence to know their tenants and their proposed use of the premises. The exercise of reasonable due diligence would have prevented leasing the properties to any of these illegal dispensaries.

369.    Furthermore, at any time after leasing to the illegal dispensaries, the property owner defendants could have easily determined that illegal cannabis was being sold at these storefronts and taken action to close down such illegal operations but chose not to do so.

370.    The storefronts of the illegal dispensaries declare on the outside that they sell cannabis. All of the illegal dispensaries make clear that they sell a wide assortment of illegal cannabis flower and other cannabis products. Even a casual observer would be able to identify any of these dispensaries as selling cannabis—and even a minimal amount of due diligence on behalf of the property owners would have disclosed that each of the Sixteen Illegal Dispensary-Defendants was unlicensed and operating illegally.

371.    Each of the Sixteen Property Owner-Defendants breached their duty of care to the legal cannabis market by failing to exercise due diligence and in leasing to unlicensed dispensaries, and later in continuing to lease to these unlicensed dispensaries.

372.    The breach of their respective individual duties of care by each of the Sixteen Property Owner-Defendants is the proximate cause for the legal cannabis market's injury – the loss of commercial sales to the illegal cannabis market. These defendants knew or should have known that their actions would cause commercial sales injury to the legal cannabis market.

373.    The legal cannabis market was injured by the Sixteen Property Owner-Defendants' breach of their duty of care by the diversion of commercial sales to the illegal cannabis market. ACLE seeks equitable relief equal to disgorgement of the Sixteen Property Owner-Defendants' profits for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this complaint or (2) the date the illegal dispensary began operations through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for their negligence in the breach of their duty to the legal cannabis market represented by ALCE.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, based on the allegations stated herein, Plaintiff respectfully request the Court grant the following equitable relief:

A.    Issue a permanent injunctive order against all Sixteen Illegal Dispensary-Defendants immediately requiring that they cease and desist the purchase and sale of (i) all cannabis not cultivated and/or manufactured by cultivators and/or manufacturers licensed by ABCA in accordance with the laws of the District of Columbia, and (ii) flavored tobacco products specifically prohibited by the DC Flavored Tobacco Prohibition Act of 2021.

B.      Issue a permanent injunctive order against all Sixteen Property Owner-Defendants immediately requiring that they take immediate action to shut down and evict any illegal dispensary-defendant who does not demonstrate the existence of a verifiable cannabis retailer license issued by ABCA

C.      Issue an order granting equitable relief to Plaintiff disgorging the profits of the Sixteen Illegal Dispensary-Defendants (Power of Plants LLC t/a Mr. Nice Guys ("Guys DuPont Circle Dispensary", "Guys Logan Circle Dispensary", "Guys Capitol Hill Dispensary", and "Guys U Street Dispensary"), American Legends LLC ("American Legends") and All American Papers LLC ("American Papers")  t/a  All American Gallery, Bakery, CBD and  Papers ("AA  Adams Morgan Dispensary", "AA Truxton Circle Dispensary", "AA U Street Dispensary", and "AA  H Street Dispensary"), Mother Blossom LLC ("Mother Capitol Hill Dispensary"), Gvn3 LLC ("Giving H Street Dispensary"), Flowerz LLC ("Flowerz Capitol Hill Dispensary"), Seedless LLC t/a N.K.A. (No Kids Allowed) ("NKA Capitol Hill Dispensary"), Euphoria Healing & Wellness LLC t/a Euphoria Canna ("Euphoria Capitol Hill Dispensary"), Bud Love LLC ("Bud Capitol Hill Dispensary"), Legacy Investment USA LLC t/a Friends Smoke Shop ("Friends Capitol Hill Dispensary"), and Dreams Wellness LLC t/a Puff Dreams ("Puff DuPont Circle Dispensary")) for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition and false advertising, violation of DC common law against unfair competition, and negligence in selling illegal cannabis without a license issued by ABCA, equal to, not less than, the following profits through November 30, 2024:

99

1. For Guys DuPont Circle Dispensary- $238,333
2. For Guys Logan Circle Dispensary- $817,800
3. For Guys U Street Dispensary- $301,455
4. For Guys Capitol Hill Dispensary-$432,877
5. For AA  Truxton Circle Dispensary-$443,065
6. For AA Adams Morgan Dispensary-$98,500
7. For AA H Street Dispensary-$483,720
8. For AA U Street Dispensary-$240,622
9. For Mother Capitol Hill Dispensary-$542,510
10. For Giving H Street Dispensary-$594,000
11. For Flowerz Capitol Hill Dispensary-$405,000
12. For NKA Capitol Hill Dispensary- $592,500
13. For Euphoria Capitol Hill Dispensary- $270,000
14. For Bud Capitol Hill Dispensary- $157,500
15. For Friends Capitol Hill Dispensary- $494,970
16. For Puff DuPont Circle Dispensary-$157,500

D.    Issue an order granting equitable relief to Plaintiff  disgorging the profits of the Sixteen

Property Owner-Defendants (3101 Rhode Island Avenue LLC ("1215 Connecticut Property

Owner"), Anfield 1470 Church LLC ("1470 Church Property Owner"), 8th Street Dev LLC ("409

8th Property Owner"), TDM LLC ("1922 9th Property Owner"), WY18 Retail, LLC

(" 2206 18th Property  Owner"), Louise D. Costa-Brown and Brian R. Brown ("1334 N. Capitol

Property Owner"), Chukwujindu Victor Mbakpuo  and Ndidiamaka E. Mbakpuo ("1908 9th

Property Owner"), Rahimi Investment Inc. ("504 H Property Owner"), Jemel's Niti LLC ("406

8th Property Owner"), Jemel's Arcade LLC ("1236 H Property Owner"), Lienhai Nguyen Quang

Trustee under the Quang Lienhai Living Trust ("318 Massachusetts Property Owner"), 637-639

Pennsylvania Avenue SE LLC ("637 Pennsylvania Property Owner"), L&S Real Estate LLC

("611 Pennsylvania Property Owner"), Zhu Li Wu and Jia Qi Ren (1829 M Property Owner"),

Steve Farzad Ardekani ("1221 Pennsylvania Property Owner"), and Faraz Ardekani ("1223

Pennsylvania Property Owner"))  for the harm they caused ALCE members and the legal

cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the

date the illegal dispensary began operations, through the date of judgment in this case (or the

date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for

contributory unfair competition and false advertising, violation of DC common law against

unfair competition, and negligence in allowing illegal cannabis to be sold by unlicensed

dispensaries from commercial properties owned by the Sixteen Property Owner-Defendants,

equal to, not less than, the following profits through November 30, 2024:

1.    For 1215 Connecticut Property Owner- $303,334
2.    For 1470 Church Property Owner-$327,120
3.    For 1922 9th Property Owner-$120,582
4.    For 409 8th Property Owner-$173,151
5.    For 1334 N. Capitol Property Owner-$334,954
6.    For 2206 18th Property Owner-$39,400
7.    For 504 H Property Owner-$193,488
8.    For 1908 9th Property Owner-$96,244
9.    For 406 8th Property Owner-$217,004
10.   For 1236 H Property Owner-$237,600
11.   For 318 Pennsylvania Property Owner-$162,000
12.   For 637 Pennsylvania Property Owner-$237,000
13.   For 611 Pennsylvania Property Owner-$108,000
14.   For 1221 Pennsylvania Property Owner-$63,000
15.   For 1223 Pennsylvania Property Owner-$197,988
16.   For 1829 M Property Owner-$63,000

C.    Issue an order finding that a property owner-defendant acting as the owner of an illegal

cannabis dispensary jointly and severally liable for equitable damages against that illegal

dispensary-defendant.

D.    Pierce the corporate veil of Defendant Power of Plants LLC to hold its owners,

Defendant Gregory David Wimsatt ("Wimsatt") and Damion West ("West") jointly and severally

liable for equitable damages against the illegal cannabis dispensaries (Guys DuPont Circle

Dispensary, Guys Logan Circle Dispensary, Guys Capitol Hill Dispensary, and Guys U Street

Dispensary) they own and control;

F.      Pierce the corporate veil of Defendants American Legends LLC and All American Papers LLC to hold its owner Defendant Ramon Roque ("Roque") jointly and severally liable for equitable damages against the illegal cannabis dispensaries (AA Adams Morgan Dispensary, AA Truxton Circle Dispensary, AA U Street Dispensary, and AA H Street Dispensary) he owns and controls:

G.      Pierce the corporate veil of Defendant Flowerz LLC ("Flowerz Capitol Hill Dispensary") to hold its owner, Defendant Chad Michael Frey ("Frey") jointly and severally liable for equitable damages against the illegal cannabis dispensary he owns and controls;

H.      Pierce the corporate veil of Defendant Legacy Investment USA LLC ("Friends Capitol Hill Dispensary") to hold its owner, Defendant Hazret Safi ("Safi") jointly and severally liable for equitable damages against the illegal cannabis dispensary he owns and controls.

I.      Grant Plaintiff recovery for the costs of litigation, and reasonable attorney fees, and any other relief deemed equitable by the Court.

Respectfully submitted,

Alliance of Legal Cannabis Entities-DC, LLC


/s/ Jon L. Brunenkant
Jon L. Brunenkant
DC Bar No. 966630
Brunenkant & Associates PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, DC 20006
(202) 559-8637
jonbrunenkant@gmail.com

Attorney for Alliance of Legal Cannabis Entities-DC, LLC

November 26, 2024